A05A0558. BROWN et al. v. MORTON.
(617 SE2d 198)

MIKELL, Judge.

Gloria Morton filed this action against Zachary T. Brown, Ben Brown, Sr., and Ben Brown, Jr., d/b/a Pro's Unlimited, Inc., a.k.a. Pool King & Company (the "Browns"), alleging breach of contract, violation of the Fair Business Practices Act ("FBPA"), fraud, conspiracy to defraud, and conversion. On April 12, 2000, Morton filed request for admissions, tracking the allegations in the complaint, to which the defendants did not respond. Morton filed a motion for summary judgment on January 19, 2001, relying on the facts outlined in the request for admissions. The defendants filed a motion to withdraw admissions on January 24, 2001.[1] After considering both motions, the trial court denied the motion to withdraw admissions and granted summary judgment to Morton on the issue of liability.

The case was tried to a jury, which awarded Morton $8,700 in actual damages and $8,000 in punitive damages. The trial court trebled the actual damages and awarded Morton $4,000 in attorney fees, entering judgment against the Browns in the total amount of $38,100. The Browns appeal the trial court's grant of summary judgment, arguing that their admissions do not, as a matter of law, establish fraud, conspiracy to commit fraud, or a violation of the FBPA. We affirm the grant of summary judgment on the fraud and conspiracy to defraud claims, but reverse as to the claim alleging a violation of the FBPA.

In reviewing grants of summary judgment, "this Court conducts a de novo review of the law and the evidence."[2] "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the

---

[1] It appears that the Browns did not oppose the motion for summary judgment.

[2] (Citations omitted.) *Desai v. Silver Dollar City,* 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

nonmoving party, warrant judgment as a matter of law."[3] "We consider only the evidence before the court at the time of its ruling on the motion for summary judgment."[4]

So viewed, the evidence shows that on or about May 7, 1998, the Browns entered into an agreement with Morton to install a pool in Morton's yard. On June 8, 1998, Morton paid the Browns $5,300 to begin the work, which included the removal of Morton's old pool and the installation of a new pool at a total cost of $10,500. The Browns began but did not complete the work, and Morton filed the instant action against them.

In their three enumerated errors, the Browns argue that the trial court erred by granting summary judgment on Morton's claims of fraud, conspiracy to defraud, and the FBPA violation. They maintain that the evidence offered in support thereof, in the form of their admissions, was insufficient to establish these claims.

In 1972, OCGA § 9-11-36 (a) was amended to provide that "[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of subsection (b) of Code Section 9-11-26 which are set forth in the request and that relate to statements or opinions of fact or of the application of law to fact."[5] The prior statute "provided that requests for admission should relate to the truth of any relevant matters of fact set forth in the request."[6] The 1972 amendment was clearly intended to broaden the scope of requests and thereby liberalize the use of this valuable discovery tool.[7] In *G. H. Bass & Co.*,[8] "[our Supreme Court] granted certiorari to consider the permissible scope of requests for admission under OCGA § 9-11-36."[9] The Supreme Court ruled that "requests for admission under OCGA § 9-11-36 (a) are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case."[10]

"Any matter admitted under OCGA § 9-11-36 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission."[11] Pursuant to OCGA § 9-11-36 (b), "the

---

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), citing OCGA § 9-11-56 (c).

[4] (Citation and punctuation omitted.) *T & R Custom, Inc. v. Liberty Mut. Ins. Co.*, 227 Ga. App. 144, 145 (1) (488 SE2d 705) (1997).

[5] OCGA § 9-11-36 (a) (1); *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327 (1) (486 SE2d 810) (1997).

[6] (Citation and punctuation omitted.) Id. at n. 1.

[7] Id. at 329 (1).

[8] Supra.

[9] Id.

[10] (Citations omitted.) Id. at 329 (1).

[11] (Footnote omitted.) *Brankovic v. Snyder*, 259 Ga. App. 579-580 (578 SE2d 203) (2003).

[trial] court may permit withdrawal or amendment of the admissions when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."[12] The trial court's ruling on this issue may be reversed only upon an abuse of discretion.[13] In this case, the trial court did not permit the Browns to withdraw their admissions because they did not satisfy the first prong of the test set forth above. Therefore, the subject matter of Morton's requests for admission stand admitted.

The Browns have admitted that shortly after being paid $5,300 and starting work, they discontinued work; that they agreed to perform the work for a sum certain; that when they entered the agreement, they did not intend to perform the work and intended to deceive Morton; that they accepted Morton's money without intending to complete the work; that Morton made several attempts to get them to return to complete the work; that they promised Morton that they would return; that they called Morton to assure her that the work would be completed; that they did not provide the consideration promised and breached the agreement; that Morton has been harmed as a result of their misrepresentations; that they removed the old pool, leaving her residence in an unsafe condition; that they have refused to repair the ground damages caused by their breach; that they conspired to defraud Morton; that Morton served her notice of intent to sue under the FBPA, and they failed to tender a written offer of settlement; and that the money paid by Morton was to improve her real property.

1. First, we consider the trial court's grant of summary judgment on the fraud claim. "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."[14] We reject the appellants' argument that there was no evidence that Morton justifiably relied on their misrepresentations. The Browns admitted that when they accepted money from Morton, they did not intend to perform the work and intended to deceive Morton. The evidence is undisputed that Morton paid them $5,300 toward the completion of the work, thus she relied on their false representations that they would do the work. Therefore, under

---

[12] See also *Ledford v. Darter*, 260 Ga. App. 585, 587 (1) (580 SE2d 317) (2003).

[13] *Brankovic*, supra at 579.

[14] (Citation and punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990).

the facts as admitted by the Browns, there remains no genuine issue of material fact as to Morton's fraud claim.

2. A "[c]onspiracy is the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means."[15] Herein, "it must be proved that there was a conspiracy to defraud and a participation in the fraudulent purpose, either in the scheme or in its execution[,] which worked injury as a proximate consequence."[16] Accordingly, even though the admission that the Browns conspired to defraud Morton was a conclusion of law, the request was proper under *G. H. Bass & Co.*,[17] and the facts admitted sufficiently supported the grant of summary judgment in Morton's favor on this claim as well.

3. We agree, however, with the Browns that the trial court's grant of summary judgment to Morton on her FBPA claim was erroneous.

> One may bring a private suit under the FBPA [(OCGA § 10-1-390 et seq.)] only if he is individually injured by the breach of a duty owed to the consuming public in general. The Act does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA.[18]

The Browns admitted that they accepted money from Morton while having no intent to do the work for which they were being paid; they assured her the work would be completed even though they had no intention of completing the work; and they refused to repair the damages they caused. However, there was no evidence that these acts were "introduced into the stream of commerce [or] . . . reasonably intended to impact on any 'market' other than [Morton]."[19] "The

---

[15] (Citation and punctuation omitted.) *Horton v. Johnson*, 192 Ga. 338, 346 (15 SE2d 605) (1941).

[16] (Citation and punctuation omitted.) Id.

[17] Supra. Accord *Wellstar Health Systems v. Green*, 258 Ga. App. 86, 90 (2) (572 SE2d 731) (2002).

[18] (Citations and punctuation omitted.) *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 451 (1) (571 SE2d 454) (2002).

[19] (Citation and punctuation omitted.) *Lynas v. Williams*, 216 Ga. App. 434, 437 (3) (b) (454 SE2d 570) (1995).

FBPA is no panacea for the congenital ills of the marketplace . . . [and the] Act does not instantly convert every alleged breach of contract into a violation of the FBPA."[20] Accordingly, we reverse the trial court's grant of summary judgment on Morton's FBPA claim.

Because we find that no viable FBPA claim exists, we also reverse the trial court's award of treble damages pursuant to OCGA § 10-1-399 (c) and attorney fees, pursuant to OCGA § 10-1-399 (d). Accordingly, the judgment should be reduced to the amount awarded in the jury's verdict, $8,700 in actual damages and $8,000 in punitive damages.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 7, 2005.

*James W. Smith*, for appellants.
*Derek M. Wright, Alan M. Shenberg*, for appellee.

---

[20] (Citation and punctuation omitted.) *DeLoach v. Foremost Ins. Co.*, 147 Ga. App. 124, 125 (1) (B) (248 SE2d 193) (1978).