A05A1807. BASSETT v. JASPER BANKING COMPANY et al.
(629 SE2d 434)

JOHNSON, Presiding Judge.

James Bassett sued Jasper Banking Company ("the bank") and two of its officers alleging, among other things, fraud and wrongful foreclosure in connection with a loan transaction. The bank moved for summary judgment, which the trial court granted. Bassett appeals from the grant of summary judgment to the bank. We find that genuine issues of material fact remain as to the fraud claim, and therefore reverse the trial court's judgment on that claim. We also vacate the grant of summary judgment as to the wrongful foreclosure claim, inasmuch as that claim can only be resolved after the fraud claim has been resolved.

---

[18] *Salter v. State*, 198 Ga. App. 242, 243-244 (1) (401 SE2d 541) (1990).

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a grant of summary judgment de novo and the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

Viewed in this light, the record reveals that Bassett had three mortgage loans totaling $150,000 on his thirty-five acres of real property. The bank, which held one of the mortgage loans, was third in priority to the other two mortgage holders. Bassett began experiencing serious health problems related to diabetes, including vision problems. He was unable to work regularly and had significant medical expenses. Concerned that he might not be able to make his mortgage loan payments, Bassett contacted Darrek Cornelison and Paul Nealey at the bank and told them of his financial concerns and his health problems, including the fact that he had become blind. He informed them that he wanted to borrow money to keep his mortgage loan payments current until he could sell the property. Bassett told the officers that he needed a loan which would "carry [him] for at least two years." He sought to pay off the three existing mortgages, pay off medical bills totaling $13,000, and hold in escrow the remaining loan proceeds to cover interest due on the new note. After considering Bassett's application, Cornelison told Bassett that the property had been appraised for $476,000 and that the loan had been approved for $200,000.

In November 2000, when Bassett went to the closing, he reiterated that he did not know when he would regain his eyesight. He told Cornelison and Nealey that he was blind and could not read the documents. He needed assistance to locate the documents' signature lines. Bassett told the men that it was imperative that he have at least two years to repay the loan, even if he was unable to make any payments during the two-year period. Cornelison and Nealey told Bassett that the bank could only advance $172,104 at the time because there was some sort of bank examination pending. The loan would mature in one year, but Cornelison and Nealey told Bassett that the loan papers were structured in such a way that he would have an additional year to repay the loan; as Bassett understood it, the note was going to be automatically renewed at the end of one year. They also told Bassett that the bank would advance the balance of the $200,000 loan later if needed. They added that Bassett would need to come in and re-sign documents after the bank examination had taken place. Bassett averred that although he told the men he was blind and

---

[1] OCGA § 9-11-56 (c).

[2] *Nall v. Bill Heard Chevrolet Co.*, 238 Ga. App. 365 (518 SE2d 164) (1999).

could not read the documents, they assured him that the documents were structured as indicated. Bassett did not ask anyone to read the documents to him.

Bassett was unable to find a buyer for the property. In the summer of 2001, he contacted Cornelison to request that the loan be extended for a year. Cornelison informed Bassett that the bank had not approved the loan renewal and that the bank would not extend the loan repayment period. Bassett defaulted on the loan payments, and the property was eventually foreclosed upon.

1. Bassett contends summary judgment on the claim of fraudulent misrepresentation is not warranted because material issues of fact remain as to each element of his claim. The five elements of fraud are: (1) false representation made by the defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff.[3]

Bassett claims the loan officers at the bank falsely represented that the bank could only approve $172,104 rather than the $200,000 he requested and it initially approved. He further claims that the bank falsely told him that, on maturity at the end of one year, the note would be automatically renewed for $200,000. He points out that the loan documents contained no such advancement or automatic renewal provisions. He adds that there was scienter in that the bank officers necessarily knew the documents contained no such provisions, that they induced him to rely on the misrepresentations, and that he was justified in his reliance because of his inability to read the documents and because of the confidential relationship between him and the loan officers (due to his disability). We agree that the bank was not entitled to summary judgment.

A summary judgment should not be rendered unless there is no genuine issue as to any material fact and unless the moving party is entitled to a judgment as a matter of law.[4] The burden is upon the movant to affirmatively show that there is no genuine issue and that he is entitled to summary judgment.[5] The party opposing the motion for summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists.[6] The trial court must give the opposing party the benefit of all favorable inferences that may be drawn from the evidence.[7] The court is not authorized to sit as both judge and jury on a motion for summary judgment, or to try and resolve issues of fact; the function of the court,

---

[3] *Shaw v. Cook County Fed. &c. Assn.*, 139 Ga. App. 419, 420 (228 SE2d 326) (1976).

[4] *Peachtree Bottle Shop v. Bessemer &c. Corp.*, 134 Ga. App. 729, 730 (215 SE2d 692) (1975).

[5] Id. at 730-731.

[6] Id. at 731.

[7] Id.

and its only authorized function under this procedure, is to determine the existence of a genuine issue of material fact.[8]

This Court has held that one signing an instrument without reading it is bound by its terms, unless it appears that he could not read and was for this reason imposed upon, or that the signing was under some emergency which excused the failure to read, or that the failure to read was brought about by some fraud or misleading device of the other party.[9] A party to a contract who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as prevents him from reading.[10]

> Where, however, one who can not read is induced to sign an instrument by the misrepresentations of the other party as to its character or contents, he is not bound thereby. He may, ordinarily, rely upon the representation of the other party as to what the instrument is or as to what it contains; and his mere failure to request the other party, or someone else, to read it to him will not generally be such negligence as will make the instrument binding upon him.[11]

Ordinarily, the question of whether the complaining party could have ascertained that the representations were false by proper diligence is for determination by the jury.[12]

In this case, there is evidence indicating that Bassett was legally blind at the time of the closing, that Cornelison and Nealey knew before closing that he was blind, that they knew at closing that he could not read the documents, and that Bassett needed assistance in placing his signature and initials on the documents. At the same time, the bank points to evidence that Bassett did not request assistance in executing the documents and had no apparent difficulty seeing or signing the documents. The conflicts in the evidence regarding whether Bassett was able to read the documents and whether the bank officers knew he was blind are for the jury to resolve. The question of whether Bassett could have ascertained that the bank officers' representations were false by exercising due diligence is also for the jury.[13]

There is also evidence from which a jury could find that the bank committed fraud in the manner in which its officers characterized the

---

[8] Id.
[9] *Pirkle v. Gurr*, 218 Ga. 424, 426 (128 SE2d 490) (1962).
[10] Id.; see *Stephens v. C & S Nat. Bank*, 170 Ga. App. 793, 794 (2) (318 SE2d 216) (1984).
[11] (Citation and punctuation omitted.) *Pirkle*, supra.
[12] Id.; see generally *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991).
[13] *Pirkle*, supra.

contractual provisions concerning whether Bassett was entitled to advances of the balance as needed and would have an additional year to repay the loan. Bassett testified by affidavit that he told the officers he needed $200,000, and that he emphasized to the officers before closing and again at closing that he needed at least two years to repay the loan. According to Bassett, the officers told him at closing that *the loan was structured so that he could receive additional funds as needed and the loan would automatically renew itself at the end of one year for a second year*. In fact, there were no such provisions in the loan agreement.

Contrary to the bank's argument, Bassett is not attempting to enforce an oral promise to make a loan in the future. Instead, were we to accept the testimony of Bassett as nonmovant on summary judgment, the bank officers actually misrepresented the provisions contained in the instrument being executed: they told Bassett the loan was structured so that he could borrow additional funds and he would have an additional year to repay it, when the loan was not so structured. We hold that a jury could find the elements of fraud from the evidence presented. Therefore, summary judgment was not appropriate.[14]

2. Bassett contends the grant of summary judgment on the wrongful foreclosure claim was improper because there is evidence that the bank fraudulently induced him to sign the loan documents. His argument in support of this enumeration essentially repeats the argument discussed in Division 1. As discussed in that Division, the bank was not entitled to summary judgment on the fraud claim and the ruling on that claim is reversed. Because the issue of whether foreclosure was wrongful can only be resolved after the fraud claim is decided, we vacate the grant of summary judgment on the wrongful foreclosure claim.[15]

*Judgment reversed in part and vacated in part. Ruffin, C. J., and Barnes, J., concur.*

DECIDED MARCH 13, 2006 —
RECONSIDERATION DENIED APRIL 10, 2006 — ■

*Stewart, Melvin & Frost, Frank Armstrong III,* for appellant.

---

[14] See generally *Contract Harvesters v. Mead Coated Board*, 239 Ga. App. 853, 856 (2) (522 SE2d 260) (1999) (physical precedent only).

[15] Bassett also cites OCGA § 23-2-114 in support of this enumeration. That statute, however, sets forth the manner in which powers of sale are to be executed. Since Bassett makes no argument in the enumeration regarding the manner of sale in this case, that statute is inapplicable and warrants no further discussion.

*Fox, Chandler, Homans, Hicks & McKinnon, Joseph A. Homans, James D. Parks*, for appellees.