A08A0889. JOHNSON v. GAPVT MOTORS, INC. et al.
(663 SE2d 779)

ELLINGTON, Judge.
The State Court of Cobb County granted the motion for summary judgment filed by GAPVT Motors, Inc. in David Johnson's action for fraud and violations of Georgia's Fair Business Practices Act in connection with his purchase of a car from GAPVT.[1] Johnson appeals, and, for the reasons that follow, we reverse.

---

[1] Johnson originally filed his action in the Superior Court of Fulton County and asserted claims against four defendants: GAPVT, Maurice Henderson, Bank of America, N. A., and Cach, LLC. After Johnson dismissed his claims against Bank of America and Cach, LLC, the court by consent order transferred the action to the State Court of Cobb County, where GAPVT and Henderson, GAPVT's salesman, reside. Although the State Court of Cobb County entered a General Civil Case Final Disposition Form, indicating that the case terminated as the result of the summary judgment order, Henderson did not join in GAPVT's motion, and it appears, therefore, that the case remains pending against him.

In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law.

(Citation omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. Further, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Sudduth v. Young*, 260 Ga. App. 56, 57 (1) (579 SE2d 7) (2003).

[O]n appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton*, 280 Ga. at 470.

Viewed in the light most favorable to Johnson, the record shows the following undisputed facts. In late March 2005, GAPVT offered a used Mustang GT for sale at its dealership, Marietta Pontiac Buick GMC Hummer. The window sticker identified the car as a Mustang Saleen, a limited edition model that is, according to Henderson, approximately twice as valuable as the Mustang GT it resembles. The car also had numerous permanent decals and markings identifying it as a Saleen. The window sticker that identified the car as a Saleen indicated that the car had some of the Saleen's special features, including a six-speed standard transmission. The car actually had a Mustang GT's five-speed standard transmission.

The evidence is undisputed that the general manager of the dealership, the used car sales manager, and Henderson all knew that

the car was not a Mustang Saleen, but was a Mustang GT with a "Saleen kit." At a sales meeting, the used car sales manager, Randy Rodriguez, told the sales staff, including Henderson, that the car was a Mustang GT, not a Saleen, and that prospective buyers should be advised accordingly.

On March 31, 2005, Johnson, who had for many years wished to own a Saleen, saw the car on the lot at the dealership and stopped to inquire. Johnson saw the "Saleen" decals and window sticker. According to Johnson, Henderson, the GAPVT salesman who dealt with him, assured him several times that the car was really a Saleen. After a short test drive on surface streets, Johnson agreed to purchase the car for $22,995. Bank of America financed the purchase and later assigned the note to Cach, LLC. None of the paperwork referred to the car as a Mustang GT.

After taking possession of the car, Johnson learned that it was not a genuine Saleen. Within a few days of buying the car, Johnson drove the car to GAPVT's dealership and tried to return the car. He handed the keys to Rodriguez, but Rodriguez told him, "the deal's been done; [t]hat is your car," dropped the keys on the ground, and ordered Johnson to leave the lot. On June 16, 2005, Johnson returned the vehicle to the lot, left the keys, and mailed a certified letter to GAPVT. The letter stated that GAPVT's dealership had "committed a fraud on" him when it sold him the car, misrepresenting it as a Mustang Saleen. In the letter, Johnson said, "I paid for a Saleen Mustang and got a Mustang GT instead. A Mustang GT is not worth close to what a Saleen Mustang is." In the letter, Johnson demanded that the dealership "make it right." On June 29, 2005, GAPVT's counsel sent a letter to Johnson, saying,

> Your financing has been approved with Bank of America and[,] as a result, you must stay current with your payments in order [to] keep your good credit. Should you fail to make payments on the vehicle, undoubtedly the bank will repossess your vehicle and this will have a derogatory effect on your credit. . . . Your attempt to unilaterally rescind this contract in excess of two months after you accepted delivery is categorically rejected by Marietta Pontiac Buick GMC Hummer. . . . Please do not underestimate how important it is to your own credit to continue making payments on this vehicle.

In July 2005, Bank of America repossessed the car.

Johnson filed this action on November 3, 2005. After Cach, LLC transferred the loan back to Bank of America, Johnson dismissed Cach, LLC from the action. On August 21, 2006, GAPVT agreed to

take the car back, to purchase the loan from Bank of America, and to rescind the note and purchase agreement. As a result, Johnson was relieved of his obligation to pay the purchase price, interest, and other costs. In addition, Bank of America paid Johnson $523.58, an amount equal to what Johnson had paid the bank as a payment under the note. The parties expressly agreed that, in accepting the payment and agreeing to dismiss Bank of America, Johnson did not admit that he had been made whole as to his claims against the other defendants and that he expressly reserved his claims against GAPVT and Henderson. Bank of America also agreed to request that the credit reporting agencies delete any credit report based upon Johnson's failure to make payments on the note. The order transferring the case to the State Court of Cobb County reflected that the parties had rescinded the purchase agreement and the note. The State Court of Cobb County granted GAPVT's motion for summary judgment.

1. Johnson contends that summary judgment on his fraud claim is not warranted because material issues of fact remain as to each element of his claim. We agree.

> The five elements of fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff.

(Citation omitted.) *City Dodge v. Gardner*, 232 Ga. 766, 769-770, n. 1 (208 SE2d 794) (1974). "For purposes of summary judgment, scienter and intent to deceive are determined on the basis of the seller's knowledge of the falsity of his representations at the time made to the prospective purchaser." (Punctuation and footnote omitted.) *Hudson v. Pollock*, 267 Ga. App. 4, 7 (2) (598 SE2d 811) (2004).

In this case, as GAPVT concedes, the evidence is undisputed that GAPVT's agents knew that, although the car had some of the outward appearance of a Mustang Saleen, the car was in fact a Mustang GT. Furthermore, there is evidence, albeit disputed, from which a jury could find that GAPVT's agents falsely represented to Johnson that the car was an authentic Mustang Saleen and that they intended to induce Johnson to purchase the car in reliance on the misrepresentation. Thus, material issues of fact remain as to the first three elements of fraud.

With regard to the fourth element, GAPVT contends that Johnson's reliance was not reasonable because Johnson "was never able to find the sixth gear" when he test-drove the car "though it is undisputed that he knew that a Mustang Saleen would have six

gears. Further, [Johnson] did not check to see if a serial number was in place verifying the car's existence as a Mustang Saleen." But Johnson deposed that the gear knob did not show that the car had only five gears, that he had limited experience driving a standard transmission, and that the circumstances of the test drive did not allow him to take the car into the highest gear. Although the conclusion that Johnson should have realized the car was not an authentic Saleen was *authorized* by the evidence, this conclusion was not *demanded* by the evidence. Indeed, whether a buyer could ascertain the falsity of a seller's representations by proper diligence, or whether the buyer was as diligent as the circumstances warranted, is a matter for a jury to determine. *Campbell v. Beak*, 256 Ga. App. 493, 497 (3) (568 SE2d 801) (2002); *Catrett v. Landmark Dodge*, 253 Ga. App. 639, 641 (1) (560 SE2d 101) (2002); *Horne v. Claude Ray Ford Sales*, 162 Ga. App. 329, 330 (2) (290 SE2d 497) (1982).

Finally, GAPVT contends that Johnson cannot show that he was damaged by the alleged fraud because he "has received a full reimbursement through the recision, . . . there has been no negative impact on his credit, . . . [and he] has been placed in his original position prior to entering the contract." Georgia law does not allow a seller to escape all liability for defrauding a customer, however, simply by refunding the purchase price. As with other tortious acts, fraud can cause the defrauded person to suffer general damages, which are not necessarily limited to pecuniary losses. *Zieve v. Hairston*, 266 Ga. App. 753, 759-760 (2) (c) (598 SE2d 25) (2004); *Economic Exterminators v. Wheeler*, 259 Ga. App. 192 (1) (576 SE2d 601) (2003). Material issues of fact remain as to whether, as a result of GAPVT's alleged fraud, Johnson suffered the general damages he claims, including for his wounded feelings and inconvenience.

Because material issues of fact remain as to each element of Johnson's fraud claim, the trial court erred in granting GAPVT's motion for summary judgment on that claim. *Bassett v. Jasper Banking Co.*, 278 Ga. App. 698, 700-702 (1) (629 SE2d 434) (2006); *Catrett v. Landmark Dodge*, 253 Ga. App. at 642 (1). Summary judgment was also inappropriate on Johnson's claim for punitive damages, which was predicated on the underlying fraud claim.[2]

2. Johnson contends that summary judgment on his claim under Georgia's Fair Business Practices Act, OCGA § 10-1-390 et seq., is

---

[2] See OCGA § 51-12-5.1 (b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."); *H & H Subs v. Lim*, 223 Ga. App. 656, 658 (1) (478 SE2d 632) (1996) ("Punitive damages are authorized under [OCGA § 51-12-5.1 (b)] when fraud is established.") (citation omitted).

not warranted because material issues of fact remain as to each element of his claim. We agree.

Under the Act, "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." OCGA § 10-1-393 (a). Unfair practices include, inter alia, "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another." OCGA § 10-1-393 (b) (7).[3] Private actions, for treble damages, are authorized under the Act, so long as the alleged violation involves "the breach of a duty owed to the consuming public in general" and therefore has at least some potential "impact on the consumer marketplace." (Punctuation omitted.) *Brown v. Morton*, 274 Ga. App. 208, 211 (3) (617 SE2d 198) (2005). See OCGA § 10-1-399 (authorizing private right of action). Thus, "[t]he Act does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction." (Punctuation omitted.) *Brown v. Morton*, 274 Ga. App. at 211 (3). But, "offering a product for sale by opening one's door to the general public should trigger the prohibitions of the [A]ct if some deceptive act or practice is involved." (Punctuation and footnote omitted.) *Catrett v. Landmark Dodge*, 253 Ga. App. at 642 (2). "To prevail on a private claim under the [Act]," a plaintiff must establish three elements: "violation of the Act, causation, and injury." *Campbell v. Beak*, 256 Ga. App. at 497-498 (4). Furthermore, "[a]t least 30 days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent." OCGA § 10-1-399 (b).

GAPVT contends that Johnson failed to provide the required ante litem notice. The record shows that Johnson sent GAPVT a certified letter more than 30 days prior to filing this action. Johnson's letter indisputably put GAPVT on notice that Johnson was the claimant. In addition, Johnson's letter stated that GAPVT had "committed a fraud on" him when it sold him the car, misrepresenting it as a Mustang Saleen. Particularly under the liberal construction we are required to give the provisions of the Act,[4] we conclude that, as a matter of law, the letter reasonably described the unfair or deceptive act or practice relied upon, that is, representing

---

[3] See also *Campbell v. Beak*, 256 Ga. App. at 498-499 (6) (the Act "differs from common law fraud in that it eliminates two of the five required elements of fraud: scienter and intent to deceive") (citation omitted).

[4] See OCGA § 10-1-391 (a) (the Act "shall be liberally construed and applied to promote its underlying purposes and policies").

that certain goods were of a particular style or model while they were of another. Finally, the letter reasonably described the injury suffered, that is, that Johnson paid a premium price for a Mustang Saleen and got a much less valuable car instead. Johnson's ante litem notice was sufficient. *Stringer v. Bugg*, 254 Ga. App. 745, 747 (1) (563 SE2d 447) (2002) (ante litem notice need not explicitly refer to the Act to be sufficient); *Paces Ferry Dodge v. Thomas*, 174 Ga. App. 642, 643 (331 SE2d 4) (1985).

Next, GAPVT contends that there is no evidence of a potential harmful effect on the consuming public, because the car "was affixed with Saleen decals and labels by some individual or entity prior to [GAPVT's] possession of the vehicle." This position is illogical. Regardless of who affixed the decals or printed the misleading window sticker, there is evidence that GAPVT offered for sale to the public a Mustang GT that was misidentified as a Saleen, a breach of a duty owed to the consuming public in general. See *Catrett v. Landmark Dodge*, 253 Ga. App. at 643-644 (2) (where there was some evidence that a car salesman misrepresented a car's condition to potential buyers, a jury issue regarding an alleged violation of the Fair Business Practices Act existed); *Greenbriar Dodge v. May*, 155 Ga. App. 892, 894 (3) (273 SE2d 186) (1980) (accord).

Furthermore, we reject GAPVT's argument that, because the parties rescinded the original sales contract, "the underlying transaction has ceased to exist and there is no longer a consumer transaction upon which [Johnson] can base his FBPA claim." See *Miles Rich Chrysler-Plymouth v. Mass*, 201 Ga. App. 693, 697 (3) (a) (411 SE2d 901) (1991) (physical precedent only) (although the plaintiff did not make any purchase from the defendant car dealer, the jury was authorized to return a verdict against the car dealer where the facts "presented a minor variation on the classic bait and switch scheme") (punctuation omitted).

Finally, GAPVT's argument that the merger clause in the purchase agreement prevents Johnson "from standing on any representation allegedly made by a salesman" directly contradicts the express provisions of the Act. In particular, OCGA § 10-1-393 (c) provides that "[a] seller may not by contract, agreement, or otherwise limit the operation of this part notwithstanding any other provision of law."

Because material issues of fact remain as to each element of Johnson's claim under the Act, the trial court erred in granting GAPVT's motion for summary judgment on that claim. *Catrett v. Landmark Dodge*, 253 Ga. App. at 643-644 (2).

3. Johnson contends that summary judgment on his claim for attorney fees under OCGA §§ 13-6-11 and 10-1-399 (a) is not warranted because of remaining material issues of fact. We agree.

There is evidence from which the jury could find that GAPVT acted in bad faith in the underlying transaction and has caused Johnson unnecessary trouble and expense and that it violated the Fair Business Practices Act and injured Johnson thereby. See OCGA §§ 13-6-11 ("where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them); 10-1-399 (d) ("[i]f the court finds in any action that there has been a violation of [the Act], the person injured by such violation shall, in addition to other relief provided for in this Code section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and expenses of litigation incurred in connection with said action").

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 18, 2008.

*Kris K. Skaar*, for appellant.
*C. Davis Bauman*, for appellees.