Renato CAPPUCCITTI, on behalf of himself and all others similarly situated, Plaintiff–Appellee,

v.

DIRECTV, INC., a California Corporation, Defendant–Appellant.

No. 09–14107.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 2010.

Matthew Dexter Richardson, Alston & Bird, LLP, Atlanta, GA, Melissa D. Ingalls, Robyn E. Bladow, Kirkland & Ellis, LLP, Los Angeles, CA, for Defendant–Appellant.

William M. Sweetnam, Sweetnam, LLC, Northbrook, IL, Deanna D. Dailey, Sprenger & Lang, PLLC, Minneapolis, MN, Carlos A. Gonzalez, Vaughan & Evans, LLC, Cartersville, GA, Charles, Stein, Siegel, Waters & Kraus, LLP, Dallas, TX, Kristen E. Law, Elizabeth Joan Cabraser, Lieff, Cabraser, Heimann Bernstein, San Francisco, CA, for Plaintiff–Appellee.

Archis Ashok Parasharami, Mayer Brown, LLP, Washington, DC, for Amici Curiae Chamber of Commerce of USA & CTIA, the Wireless Ass'n.

John H. Beisner, Skadden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, for Washington Legal Found., Amicus Curaie.

Caryn L. Bellus, Kubicki Draper, Miami, FL, Thomas A. Burns, Hill, Ward & Henderson, P.A., Tampa, FL, for Florida Defense Lawyers Ass'n, Amicus Curiae.

ON PETITION FOR REHEARING

Before TJOFLAT, WILSON and EBEL,[*] Circuit Judges.

PER CURIAM:

On July 19, 2010, we issued an opinion in this case. *Cappuccitti v. DirecTV, Inc.*, 611 F.3d 1252 (11th Cir.2010). We based our decision on our interpretation of the jurisdictional requirements of the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), which we have elsewhere called a "statutory labyrinth." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1199 (11th Cir.2007). Subsequent reflection has led us to conclude that our interpretation was incorrect. Specifically, CAFA's text does not require at least one plaintiff in a class action to meet the amount in controversy requirement of 28 U.S.C. § 1332(a). Accordingly, we construe both parties' petitions for rehearing en banc to include petitions for panel rehearing,[1] vacate our earlier opinion, and replace it with this one.

I.

DirecTV, Inc. ("DirecTV"), a California corporation, is the largest direct-to-home satellite television provider in the United States, beaming a wide variety of pro-

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

1. 11th Cir. R. 35–5 ("A petition for rehearing en banc will also be treated as a petition for rehearing before the original panel.").

grams to millions of subscribers throughout the country. In June 2004, Renato Cappuccitti, a Georgia resident, entered into an agreement (the "Customer Agreement") to receive DirecTV's service and thereby became a DirecTV subscriber.[2] In March 2008, Cappuccitti cancelled his subscription. In response, in April 2008, DirecTV charged him a $420 "early cancellation fee" in accordance with the terms of the Customer Agreement.

On March 6, 2009, Cappuccitti, on behalf of himself and a putative class of DirecTV subscribers in Georgia, brought this action against DirecTV in the United States District Court for the Northern District of Georgia. Although Cappuccitti had not paid the cancellation fee, his complaint sought recovery of the fee in Count I, a claim for "Money Had and Received," and in Count II, a claim for "Unjust Enrichment." In Count III, Cappuccitti sought a declaratory judgment invalidating the cancellation fee on the ground that it is unlawful and therefore unenforceable under Georgia law.[3] On May 11, 2009, DirecTV filed a motion to compel arbitration under the arbitration clause of the Customer Agreement or, alternatively, to dismiss Counts I and II, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the

ground that Cappuccitti had not paid the cancellation fee.[4] On July 17, 2009, the district court issued an order denying the motion to compel arbitration and granting the motion to dismiss Counts I and II. Count III remained undisturbed. DirecTV now appeals the part of the order denying arbitration. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B).

## II.

In subpart A., we address the question of whether CAFA afforded the district court subject matter jurisdiction to entertain this class action. Concluding that the court did possess jurisdiction, we address, in subpart B., the question of whether the district court erred in denying DirecTV's motion to compel arbitration.

## A.

Under 28 U.S.C. § 1332(d)(2)(A):

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

---

**2.** The Customer Agreement was modified a number of times—in accordance with its terms—between its formation and Cappuccitti's cancellation of DirecTV's service. Like the district court, we analyze the provisions of the Customer Agreement in effect at the time Cappuccitti cancelled the service.

**3.** Georgia law provides the rule of decision in this case since the Customer Agreement was entered into in Georgia and performed there. As we indicate in part II.B., *infra*, nowhere in the three counts of his complaint does Cappuccitti identify the specific Georgia law— whether statutory or case law—that purportedly renders the early cancellation fee unlawful.

**4.** On June 29, 2009, with leave of court, Cappuccitti filed a First Amended Class Action Complaint to add David Ward as a named plaintiff (along with Cappuccitti). Ward had become a DirecTV subscriber in August 2008. In May 2009, he refused to enter into a new customer agreement and cancelled his subscription. DirecTV charged him a $300 early cancellation fee. Ward is not a party in this appeal. In denying arbitration, the district court did not consider the amended complaint (which, with the exception of references to Ward, is substantively identical to the initial complaint) and Ward's individual claim. Instead, the district court treated the initial complaint as the operative pleading. We do likewise.

**1122**

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant....

A "class action" includes "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1)(B).

Additionally, the putative class must contain at least 100 members for a district court to exercise subject matter jurisdiction under CAFA. *Id.* § 1332(d)(5). To determine whether the amount in controversy requirement is met "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.* § 1332(d)(6).

▉ There is no requirement in a class action brought originally or on removal under CAFA that any individual plaintiff's claim must exceed $75,000. *See, e.g.,* 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3704 (Supp.2010) ("CAFA ... extends federal subject matter jurisdiction to class actions when there is minimal diversity and the total amount in controversy exceeds $5,000,000, exclusive of interest and costs, and provides for aggregation even if no individual class member asserts a claim that exceeds $75,000.").[5] Eleventh Circuit precedent does not contradict this proposition.[6]

▉ Applying these requirements to the controversy at hand, it becomes clear that the district court had subject matter jurisdiction as an original matter. Cappuccitti brought the action on behalf of himself and all persons similarly situated pursuant to Rule 23. The putative class exceeded 100 persons,[7] and the amount of controversy—in the aggregate—exceeded $5,000,000, exclusive of interest and costs.[8]

---

5. We note that for a *mass* action to be brought under CAFA, however, additional jurisdictional requirements must exist. *See* 28 U.S.C. § 1332(d)(11)(B)(i); *see also Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1199–1207 (11th Cir.2007).

6. *See Miedema v. Maytag Corp.,* 450 F.3d 1322, 1330–32 (11th Cir.2006) (considering whether individual claims valued at less than $1,000 exceeded $5,000,000 in the aggregate in an extensive discussion of subject matter jurisdiction over a class action under CAFA); *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1163 (11th Cir.2006) (stating that, "[u]nder CAFA, federal courts now have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity" and making no mention of a further requirement that any one plaintiff satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a)).

7. Plaintiffs do not specifically allege that the class is larger than 100 persons, but simple arithmetic dictates that it must be far larger. With damages to individuals ranging from $175 to $480, the class size must be at least 10,417 ($5,000,000 divided by $480).

8. In his amended complaint, Cappuccitti states that "the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs," and DirecTV does not challenge this assertion. "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." *Lowery,* 483 F.3d at 1211. We assume that the sum claimed here by Cappuccitti was made in good faith, and it therefore controls. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). We note, however, that discovery may uncover certain facts—such as an insufficient number of Georgia subscribers, and therefore an insufficient number of class members, to allow for a potential recovery of $5,000,000—that would destroy the district court's jurisdiction over the case and require the district court to dismiss the case under Federal Rule of Civil Procedure 12(b)(1). *See id.* at 289, 58 S.Ct. 586 (discussing the "legal certainty" test).

As the plaintiff class was comprised entirely of Georgia residents, there was sufficient diversity, since DirecTV is a California corporation. These factors alone were sufficient to allow the district court to exercise subject matter jurisdiction, and the further requirements and exceptions to jurisdiction under CAFA neither apply nor warrant discussion here.

In sum, Cappuccitti properly requested that the district court certify his proposed class pursuant to Rule 23(c) in order to obtain declaratory and injunctive relief under Rule 23(b)(2) and damages under Rule 23(b)(3).

### B.

Contractual disputes between Cappuccitti and DirecTV are subject to binding arbitration[9] in accordance with Section 9 of the Customer Agreement. Section 9 states:

> You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law .... Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to [the] filing fee [you would be charged by the state court], not to exceed $125 .... We also agree to pay the costs of the arbitration proceeding.

Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules.[10] The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration.

The JAMS Rules in effect at the time the contract was made and when Cappuccitti cancelled his service provide that the arbitrator can award attorney's fees and expenses if allowed by applicable state law, here Georgia law. *JAMS Streamlined Arbitration Rules & Procedures* 18–19 (2007), *available at* http://www.jamsadr.com/files/Uploads/Documents/JAMS-streamlined_arbitration_rules–2007.pdf.

Section 9 also states: "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity."[11] Section 9 therefore requires that Cappuccitti, proceeding individually, arbitrate his claim that the early cancellation fee is invalid.

█ Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements generally are considered valid and enforceable.[12] They may be held un-

---

**9.** At the top of the Customer Agreement is the following statement: "**THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9).**"

**10.** JAMS is an alternative dispute-resolution provider.

**11.** Section 9 contains a severability clause, which states that "[i]f ... the law of your state would find this agreement to dispense with class arbitration procedure unenforceable, then this entire Section 9 [provision for arbitration] is unenforceable."

**12.** The FAA provides that,

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be *valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

**1124**

enforceable, however, if, under the controlling state law of contracts, requiring arbitration of a dispute would be unconscionable.[13] *See Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). Cappuccitti contends that requiring him individually to arbitrate the validity of the early cancellation fee would be unconscionable under Georgia law.

◼ The Georgia law of contracts deems an arbitration clause unenforceable if, "in the light of the general commercial background and the commercial needs of the particular trade or case, the clause[ ] involved [is] so one-sided as to be unconscionable *under the circumstances existing at the time of the making of the contract."* NEC Techs., Inc. v. Nelson,* 267 Ga. 390, 478 S.E.2d 769, 771 (1996) (internal citations omitted) (emphasis added).[14]

◼ Georgia's unconscionability doctrine contemplates both procedural unconscionability, which "addresses the process of making the contract," and substantive unconscionability, which "looks to the contractual terms themselves." *Id.* (internal

citations omitted). When considering procedural unconscionability, the Georgia courts examine "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.* at 772 (internal citations omitted). As for the substantive element, "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* (internal citations omitted). It is obvious from these quotations that resolving the issue of unconscionability under Georgia law is a fact-intensive exercise.

◼ A finding that enforcing a contract provision would be unconscionable is a finding of an ultimate fact; it is inferred from a variety of circumstances depending on the nature of the case.[15] In a sense, a court must conduct a mini-bench trial to reach the finding.[16] The precise issue we

13. We refer to the law of contracts governing "contracts generally and not arbitration agreements specifically." *Dale v. Comcast Corp.,* 498 F.3d 1216, 1219 (11th Cir.2007) (quoting *Bess v. Check Express,* 294 F.3d 1298, 1306 (11th Cir.2002)).

What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress's intent.

*Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686, 116 S.Ct. 1652, 1655, 134 L.Ed.2d 902 (1996) (quoting *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995)). In *Doctor's Associates,* the Court mentioned "unconscionability" as a typical contract law basis

for declining to enforce an arbitration agreement. 517 U.S. at 687, 116 S.Ct. at 1656.

14. The Supreme Court of Georgia noted that unconscionability is a "flexible doctrine designed to allow courts to directly consider numerous factors which may adulterate the contractual process." *NEC Techs., Inc. v. Nelson,* 267 Ga. 390, 478 S.E.2d 769, 771 (1996) (internal quotations and citations omitted).

15. One could argue that the ultimate finding on the unconscionability issue is also a legal conclusion, i.e., unconscionability is a mixed question of fact and law. If so, because unconscionability is determined on a case-by-case basis, the determination is nonetheless heavily fact laden.

16. In most cases, the court will make the finding on the basis of the claims the plaintiff

must resolve here is whether the evidence before the district court, and its subsidiary fact findings, were sufficient to justify the inference—the ultimate finding—that requiring Cappuccitti individually to arbitrate his claim that the early cancellation fee is invalid would be unconscionable and would have been so "under the circumstances existing at the time" he and DirecTV entered into the Customer Agreement in force at the time he cancelled his subscription. *See id.* at 771.

In the district court, Cappuccitti argued that it would be unconscionable to require him individually to submit his claim that the early cancellation fee is invalid to arbitration for two interrelated reasons. First, he claimed that the amount he could recover in arbitration, $420, would be far less than the expenses he would incur in obtaining the recovery. This was so because his claim was labeled as one for money had and received or for unjust enrichment, and Georgia law did not afford a claimant prevailing on either claim the right to reimbursement for attorney's fees and costs. Second, Cappuccitti argued that his inability to recover attorney's fees and costs in combination with Section 9's bar against consolidating claims for arbitration or pursuing them as a member of a class worked effectively to preclude him from obtaining legal representation. As a

result, DirecTV was charging and being paid an invalid cancellation fee with impunity.

The *sine qua non* of Cappuccitti's argument was, and remains, the unavailability of attorney's fees and costs. DirecTV met the argument head on by drawing the district court's attention to Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. § 10–1–390 *et seq.* The FBPA, in O.C.G.A. § 10–1–399(d), provides that

> [i]f the court finds in any action that there has been a violation of [the FBPA], the person injured by such violation *shall,* in addition to other relief provided for in this Code section and irrespective of the amount in controversy, *be awarded reasonable attorneys' fees and expenses of litigation* incurred in connection with said action.

(Emphasis added).[17]

The FBPA, in O.C.G.A. § 10–1–393(a), states that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." DirecTV contended that its practice of charging its subscribers an early cancellation fee clearly involved "consumer transactions" and "practices in ... commerce." And, reduced to its essentials, Cappuccitti's claim was that the early cancellation fee was "[u]nfair or deceptive."[18] Count

is asserting, the contract documents (including the arbitration clause), the representations of the parties, judicial notice of court judgments, statutes, regulations (such as the amount of state and federal court filing fees), adjudicative facts (*see* Fed.R.Evid. 201), affidavits, or testimony.

17. Still another FBPA provision, O.C.G.A. § 10–1–399(c), provides a private right of action for treble damages "so long as the alleged violation [of the FBPA] involves 'the breach of a duty owed to the consuming public in general' and therefore has at least some potential 'impact on the consumer marketplace.'" *Johnson v. GAPVT Motors, Inc.,* 292

Ga.App. 79, 663 S.E.2d 779, 784 (2008) (quoting *Brown v. Morton,* 274 Ga.App. 208, 617 S.E.2d 198, 202 (2005)).

Presumably, Cappuccitti could have brought suit under this provision if he had cause to believe that DirecTV intended to act unfairly or deceptively in inserting the early cancellation fee into the Customer Agreement. A showing of intent, however, is not required to prevail on all FBPA claims. *See* O.C.G.A. § 10–1–399(a).

18. This essentially is the basis for Cappuccitti's causes of action for money had and received and unjust enrichment. *See infra* notes 20 and 21.

III alleged as much; it sought a declaration that the cancellation fee is "unenforceable under Georgia law" and is an "illegal penalty provision" that lacks "support in the law." First Am. Class Action Compl. 14, June 29, 2009, ECF No. 29. Thus, at least in substance, Count III stated an unfair or deceptive acts or practices claim without citing § 10–1–393(a).

In determining whether requiring Cappuccitti to submit his claim to arbitration would be unconscionable, the district court faced the same question we face here: would it have been be unconscionable "under the circumstances existing at the time of the making of the contract"? *NEC Techs.*, 478 S.E.2d at 771. To answer that question the district court needed to consider *all* of the remedies available to Cappuccitti under Georgia law at the moment he contracted with DirecTV. The FBPA provided the basis for one of those remedies in O.C.G.A. § 10–1–393(a)—namely, a declaration that the cancellation fee was unfair or deceptive and thus unlawful. The FBPA also authorized, in O.C.G.A. § 10–1–399(d), the recovery of "reasonable

attorneys' fees and expenses of litigation." Cappuccitti acknowledged all of this in his memorandum in opposition to DirecTV's motion to compel arbitration. The memorandum stated that he could have "theoretically pleaded" an FBPA claim in his complaint, and "d[id] not deny" that he "purposely did not plead [the FBPA] claim in order to be able to proceed as a class."[19] Pl.'s Mem. in Opp'n 18, 17 n.14, May 29, 2009, ECF No. 21. Cappuccitti also acknowledged that the FBPA "provide[d] for enhanced damages and attorneys' fees." *Id.* at 17.

According to Cappuccitti, he was "entitled to have DIRECTV's motion evaluated on the basis of his complaint as filed, not based on additional causes of action he could have pleaded." *Id.* at 18. The district court bought this argument. In doing so, the court disregarded the circumstances prevailing at the time of the contract, and, instead, substituted for those circumstances the circumstances Cappuccitti's attorneys created in limiting their client's remedies to money had and received[20] and unjust enrichment.[21] In ef-

---

19. O.C.G.A. § 10–1–399(a) authorizes private actions under the FBPA but specifically precludes a private plaintiff from bringing such a claim "in a representative capacity."

20. In Georgia, a claim for money had and received is quasi contractual. It "is comprised of the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." *Fernandez v. WebSingularity, Inc.*, 299 Ga.App. 11, 681 S.E.2d 717, 721 (2009) (internal quotations and citations omitted). More generally,

> [a]n action for money had and received, although legal in form, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity. Such a claim exists only where

there is no actual legal contract governing the issue.

*Id.* (internal quotations and citations omitted); *see generally Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 349 S.E.2d 368 (1986).

Although we need not decide the issue, it appears that a cause of action for money had and received is not available in this case because the dispute at issue arises out of an express contract, the Customer Agreement.

21. In Georgia,

> The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay. The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received.

fecting this substitution, the court was able to conclude that Cappuccitti could not recover his attorney's fees and costs if he prevailed individually in arbitration.[22]

The court erred. As Cappuccitti readily conceded in opposing DirecTV's motion to compel arbitration, attorney's fees and litigation expenses would be available to him if he prevailed on the theory that the early cancellation fee is invalid as "[u]nfair or deceptive" under O.C.G.A. § 10–1–393(a). The JAMS Rules provide for the award of attorney's fees and litigation expenses if allowed by state law, and O.C.G.A. § 10–1–399(d) authorizes them.

In light of this, it is apparent that the district court's order denying arbitration must be vacated and the case remanded for further proceedings consistent with this opinion. We therefore VACATE the order and REMAND the case for further proceedings.[23]

SO ORDERED.

---

*Morris v. Britt,* 275 Ga.App. 293, 620 S.E.2d 422, 424 (2005) (internal quotations and citations omitted); *see also Tuvim v. United Jewish Cmtys., Inc.,* 285 Ga. 632, 680 S.E.2d 827, 829–30 (2009) (quoting *Engram v. Engram,* 265 Ga. 804, 463 S.E.2d 12, 15 (1995)) ("Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for."). As we observed in note 20, *supra,* the dispute here arises out of an express contract, not a quasi contractual obligation.

22. The district court denied DirecTV's motion to compel arbitration on paper as opposed to a face-to-face hearing with counsel. The evidence therefore was limited to Cappuccitti's complaint, DirecTV's motion to compel arbitration or, alternatively, to dismiss Counts I and II, and Cappuccitti's memorandum in opposition to DirecTV's motion to compel. In its order denying the motion, the court made no reference to the FBPA or to the specific provisions of Section 9 of the Customer Agreement and the JAMS Rules, which incorporated Georgia law and thus authorized the award of attorney's fees and litigation expenses to successful FBPA claimants in arbitration.

23. We note that this action has been transferred pursuant to 28 U.S.C. § 1407 to the District Court for the Central District of California for consolidated pretrial proceedings. Transfer Order, Oct. 13, 2009, ECF No. 45.