**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 7, 2015**

# In the Court of Appeals of Georgia

A15A0511, A15A0512. ALVEAR v. SANDY SPRINGS TOYOTA,
    INC.; and vice versa.

BRANCH, Judge.

Appellant Nadia Alvear brings the first of these companion appeals from a grant of summary judgment to Sandy Springs Toyota, Inc. ("SST"), in Alvear's suit for fraud and other claims concerning her June 2012 purchase of a 2007 Honda Civic from the dealership that had, at the time of sale, an odometer reading of 3,650 miles. Prior to the sale to Alvear, an SST technician thought that the car had been driven many more miles than the odometer showed and told his superiors so. Alvear later learned that by June 2011, more than a year before she bought the Honda, a vehicle history report showed the car as having been driven approximately 120,000 miles, or more than thirty times its odometer reading at the time SST obtained the car. In Case

No. A15A0511, Alvear argues that the trial court erred when it granted summary judgment to SST because genuine questions of material fact remain as to her claims for fraud and violation of the Fair Business Practices Act ("FBPA") (OCGA § 10-1-390 et seq.). In Case No. A15A0512, SST argues that the trial court erred when it denied SST summary judgment on Alvear's claim under Georgia's odometer statute (OCGA § 40-8-5). We conclude that issues of fact remain as to Alvear's fraud and odometer statute claims but that she did not comply with the ante litem requirement of the FBPA. We therefore reverse in part in Case No. A15A0511 and affirm in Case No. A15A0512.

On appeal from a grant of summary judgment, we view the facts in a light most favorable to the non-movant in order to determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the movant was entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250, 251 (510 SE2d 541) (1998).

Viewed in favor of Alvear, the record shows that SST acquired the 2007 Honda Civic at issue in May 2012, when a customer traded in the car. An odometer disclosure statement completed by the seller and SST stated that the car had been driven 3,650 miles. An Auto-Check vehicle history report obtained by Alvear in

2

February 2013 showed, however, that the odometer reading fell from 120,000 miles in June 2011 to only 2490 miles in October 2011. The SST technician inspecting the car for possible resale noted the car's low odometer reading on his report because he "couldn't believe that it only had 3,000 miles on it" in light of its "wear." The technician observed that the car was a "typical rally" car, with a "stiffened" suspension, custom wheels, and a "very loud" custom exhaust; substantial wear on its tires and rear brakes; and missing a spare tire and a radio code. The technician also noted his opinion that the car "[would] not pass emissions" because it lacked a catalytic converter. On the basis of these observations, the technician concluded that the car "was a high-mileage vehicle." The technician then told his supervisor, who worked in the parts department, that he "didn't think the car['s mileage] was what [the odometer] says." The technician also noted, however, that because modern odometers could not be rolled back because "the odometer will break or a blank screen will come up," he "didn't know what happened" to this car's odometer.

Despite the technician's expressed reservations about the car, SST placed it on its sales lot, where it attracted substantial attention and was given numerous test drives. The car passed an emissions test on June 1, 2012, at which time a catalytic converter was noted as "present." At some point before its sale to Alvear, an SST

3

employee reviewed an Auto-Check vehicle history report on the car.[1] On June 5, Alvear went to the dealership and discussed the car with a saleswoman, who pointed out the car's low mileage and said that it had only one prior owner.[2] Although Alvear found it "hard . . . to believe" that the car's mileage was so low, the saleswoman answered her questions on the subject and "seemed pretty credible."

After a test drive, and without asking for a vehicle history report, Alvear decided to purchase the car "as is," with "no warranty." At the time of purchase, Alvear received a document entitled "ODOMETER DISCLOSURE STATEMENT" that read as follows:

> I, Sandy Springs Toyota[,] state that the odometer now reads *3650* (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.
>
> _____ (1)    I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
>
> _____ (2)    I hereby certify that the odometer reading is NOT the actual mileage. WARNING: ODOMETER DISCREPANCY.

---

[1] This report does not appear in the record.

[2] The saleswoman's statements to Alvear were offered not for their truth but for the fact that they were made, and are thus not hearsay. See OCGA § 24-8-801 (c) (defining hearsay as including a statement "offered in evidence to prove the truth of the matter asserted").

4

Neither of the two qualifying statements was marked. A "retail buyer's order" apparently completed at the time of purchase listed the car's mileage as "*36506*," with the last digit of this number written in by hand. This document also purported to certify "that to the best of [SST's] knowledge[,] the odometer of *36506* reflects the actual mileage of the vehicle described above." This document was signed only by the sales manager, however, and there is no evidence that Alvear received, saw or discussed it before buying the car.

Alvear drove the car for two or three months until its engine failed. Alvear first took the car to a Honda dealership, which gave her a vehicle report noting a problem with the odometer and told her that the engine needed replacing at a cost of $8000. When Alvear declined the Honda dealership repair and returned to SST, SST refused to repair or take back the car. In January 2013, Alvear filed the instant suit for fraud, breach of contract, and violation of the Georgia odometer statute, later amending her complaint to include a violation of the FBPA. SST moved for partial summary judgment as to Alvear's fraud, odometer statute, and FBPA claims as well as her request for punitive damages. The trial court granted SST summary judgment on

Alvear's fraud and FBPA claims but denied summary judgment on the odometer statute claim. These appeals followed.

Case No. A15A0511

1. In the first appeal, Alvear argues that the trial court erred when it granted SST summary judgment on her fraud claim because genuine issues of material fact remain as to that claim. We agree.

The five elements of a fraud claim are: "(1) false representation made by defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting in reliance by plaintiff; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff." *Paulk v. Thomasville Ford Lincoln Mercury*, 317 Ga. App. 780, 782 (1) (732 SE2d 297) (2012) (citation and punctuation omitted). As the Supreme Court of Georgia has recently repeated, a plaintiff asserting a fraud claim "must show not only that he relied on some misrepresentation, but [also that] his reliance was reasonable." *Raysoni v. Payless Auto Deals*, 296 Ga. 156 (766 SE2d 24) (2014) (citation and footnote omitted).

Construed in favor of Alvear, the evidence shows that SST issued an odometer disclosure statement that misstated the mileage of the Honda as one-thirtieth of its actual mileage even after learning, through one of its employees, that the car's

6

condition belied the content of SST's statement. Alvear's evidence also shows that when she specifically asked a saleswoman about the car's apparently low mileage, the saleswoman emphasized that feature of the car.

The Georgia fraud statute, OCGA § 51-6-2, specifies that "[m]ere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action[,]" id. at (a), and also that "[a] fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false." Id. at (b). The question "[w]hether it was reasonable for one to rely upon a certain misrepresentation is generally a question for the jury." *Raysoni*, 296 Ga. at 157 (citation omitted); see also *Catrett v. Landmark Dodge*, 253 Ga. App. 639, 641 (1) (560 SE2d 101) (2002). This record creates a question of fact as to whether SST issued a substantially inaccurate odometer statement, made "to the best of [SST's] knowledge," and purportedly reflecting "the actual mileage" of the Honda, even when more than one employee either knew that written statement to be false or recklessly disregarded the possibility that it was so, and when a saleswoman assured Alvear that the odometer was accurate. A question of fact therefore remains for a jury to determine whether SST's representations to Alvear were fraudulent. OCGA § 51-6-

2 (b); see also *Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303, 309 (2) (609 SE2d 659) (2005) (in light of salesman's lack of knowledge as to a car's actual condition, his mispresentation that it "had never been in an accident" could amount to fraud under OCGA § 51-6-2 (b)).

To avoid this conclusion, SST argues that Alvear's reliance was not reasonable, pointing to evidence that Alvear bought the car "as is" and that she could easily have obtained either a vehicle report or an independent inspection of the car. As our Supreme Court has recently indicated, however, when written materials received at the time of sale confirm a dealer's misrepresentation as to a car's condition, neither a written contract's general disclaimer that a car is sold "as is" with "no warranty" nor a buyer's failure to obtain an independent inspection of the vehicle can establish that the buyer was not sufficiently diligent in investigating the purchase as a matter of law. See *Raysoni*, 296 Ga. at 159-160 (a "general disclaimer of warranties," including "AS IS NO WARRANTY" clause, which was "at least arguably equivocal and limited," did not preclude reasonable reliance on a vehicle report showing that a vehicle had not been damaged; dealer's written advice to obtain an independent inspection "does not squarely contradict the representations upon which [the plaintiff]

8

bought the [vehicle]" and thus "[did] not make his reliance unreasonable as a matter of law").[3]

SST's citation to *Paulk*, 317 Ga. App. 780, is also unavailing. In that case, a a prospective buyer questioned a salesman about apparent damage to a car offered "as is." Id. at 781. The salesman replied that although he was "not sure" about the damage, the car came with a manufacturer's warranty such that the buyer should "feel safe, pretty much," about the purchase. Id. Under these facts, we concluded, which showed only an "expression of uncertainty" as to the car's condition, the buyer could show neither misrepresentation nor justifiable reliance. Id. at 783 (1). Here, by contrast, SST misrepresented in writing an inarguably material characteristic of the car – its mileage, and a saleswoman confirmed that misrepresentation under questioning by an initially skeptical Alvear. Because the evidence outlined above was thus sufficient to create jury questions on the issues of SST's knowledge of the misrepresentation, its intent in making that misrepresentation, and Alvear's justifiable

---

[3] We understand that *Raysoni* found evidence sufficient to create a question of fact as to the "limited" nature of the disclaimer in the sales contract at issue itself, such that the trial court erred in dismissing the plaintiff's suit for fraud and other claims. 296 Ga. at 159. Here, the fact that Alvear produced evidence outside of the language of her contract with SST does not change the result that SST's representations as to the accuracy of the car's odometer create genuine issues of fact as to Alvear's claims.

reliance on it, the trial court erred when it granted SST summary judgment on Alvear's fraud claim.

2. Alvear also contends that genuine issues of fact remain as to her claim under the FBPA, as to which the trial court granted summary judgment to SST on the ground that Alvear had failed to comply with OCGA § 10-1-399 (b). We disagree.

The Act outlaws "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]" OCGA § 10-1-393 (a). Unfair practices include representations that "goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another." OCGA § 10-1-393 (b) (7). Private actions for treble damages are authorized under the Act so long as the alleged violation involves "the breach of a duty owed to the consuming public in general" and thus has "at least some potential 'impact on the consumer marketplace.'" *Johnson v. GAPVT Motors*, 292 Ga. App. 79, 84 (2) (663 SE2d 779) (2008), quoting *Brown v. Morton*, 274 Ga. App. 208, 211 (3) (617 SE2d 198) (2005). Offering a product for sale to the public triggers the prohibitions of the Act "if some deceptive act or practice is involved." *Johnson*, 292 Ga. App. at 84 (2), quoting *Catrett*, supra, 253 Ga. App. at 642 (2).

10

To prevail on a private claim under the Act, "a plaintiff must establish three elements: violation of the Act, causation, and injury." *Johnson*, 292 Ga. App. at 84 (2) (citation and punctuation omitted); see also *Catrett*, 253 Ga. App. at 642 (2). But an FBPA plaintiff must also comply with the ante litem requirement of OCGA § 10-1-399 (b), which provides:

> At least 30 days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent.

On appeal, Alvear has failed to cite any evidence showing that she sent a written demand for relief to SST at any time before filing suit in January 2013. Instead, she asserts that because she filed suit months before amending her complaint to include her FBPA claim, SST had written notice of her claim more than 30 days before it was actually asserted. Construing the first version of a complaint as "written demand for relief" filed "prior to the filing of any such action" would render OCGA § 10-1-399 (b) meaningless, however. Because Alvear failed to make a written demand of the dealership at least 30 days before bringing her suit, the trial court did not err when it granted SST summary judgment as to Alvear's FBPA claim. OCGA § 10-1-399 (b); *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 810 (2) (a) (689

11

SE2d 843) (2009) (affirming trial court's grant of summary judgment under OCGA § 10-1-399 (b) when plaintiff "fail[ed] to demonstrate that the notice requirement was inapplicable in his case" and had "failed to deliver the proper statutory notice"). Compare *Johnson*, 292 Ga. App. at 85 (2) (car purchaser's letter stating that dealership had "committed a fraud" on him when it sold him the car and that he had suffered financial injury as a result satisfied OCGA § 10-1-399 (b)); *Lynas v. Williams*, 216 Ga. App. 434, 435 (3) (a) (454 SE2d 570) (1995) (car owner's pre-suit letter was sufficient to alert repairer of owner's FPBA claim).

Case No. A15A0512

3. In the companion appeal, SST argues that the trial court erred when it failed to grant SST summary judgment as to Alvear's claim under the odometer statute, OCGA § 40-8-5. We disagree.

The statute provides in relevant part:

(a) It shall be unlawful for any person knowingly to tamper with, adjust, alter, change, set back, disconnect, or fail to connect an odometer of a motor vehicle, or to cause any of the foregoing to occur to an odometer of a motor vehicle, so as to reflect a lower mileage than the motor vehicle has actually been driven[.]

 . . .

12

(c) It shall be unlawful for any person *knowingly to sell or attempt to sell a motor vehicle which reflects a lower mileage than the motor vehicle actually has been driven due to any illegal acts outlined in subsection (a)* of this Code section.

OCGA § 40-8-5 (emphasis supplied.) Where there is "considerable conflict in the evidence regarding the actual mileage" of a car, "[i]t is for a jury to determine whether [a seller] took any action to alter the odometer or had any knowledge that it had been altered." *Joseph Charles Parrish, Inc. v. Hill*, 173 Ga. App. 97, 99 (3) (325 SE2d 595) (1984).

Although the trial court found "no evidence" that SST "knowingly sold the vehicle with an altered odometer," it also noted that the SST technician "had reason to suspect" that the car's odometer reading "was inaccurate" and that the technician informed his supervisor of his suspicions as to the car. SST argues that the first of these findings bars recovery under the odometer statute. But Alvear could survive summary judgment under subsection (c) if any evidence supported a reasonable inference that SST attempted to sell her a car with knowledge that the car's odometer did not reflect its actual mileage as a result of "any illegal acts" taken by any person.

Here, SST's own technician actually suspected that the Honda's odometer reading was inaccurate, and reported his suspicion to his superior, with the result that

13

SST had a duty to investigate before selling the car to Alvear with a certification that the odometer reading was accurate. *Winder v. Paul Light's Buckhead Jeep Eagle Chrysler Plymouth*, 249 Ga. App. 707, 711 (2) (549 SE2d 515) (2001). In *Winder*, for example, the evidence included testimony from a dealership's mechanics that the car at issue "appeared to have substantially more miles on it than shown by the odometer" such that the car "had been driven far in excess" of the mileage reflected on the odometer when the dealership acquired the car. Id. at 710-711. We reasoned that "[i]f [the dealership] had reason to suspect that the car's odometer reading was inaccurate, then it had a duty to reasonably investigate that suspicion before selling the car to Winder and giving her an odometer disclosure statement certifying that the odometer reading was accurate." Id. at 711. Specifically, a factfinder could conclude from the testimony of the technician who inspected the car that the dealership "had reason to suspect that the . . . car had been driven more miles than the odometer reflected" and "knew or should have known by conducting a reasonable investigation that the odometer reading was not accurate[.]" Id. As we have described in greater detail above, this case presents just this evidence, with the result that such that the trial court did not err when it denied SST summary judgment as to Alvear's claims under

14

OCGA § 40-8-5 (c). Id. (reversing grant of summary judgment as to a claim against car seller under OCGA § 40-8-5 (c)).

*Judgment affirmed in part and reversed in part in Case No. A15A0511; judgment affirmed in Case No. A15A0512. Andrews, P. J., concurs, and Miller, J., concurs in judgment only*.