**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0237. EDEL et al. v. SOUTHTOWNE MOTORS OF
　　　NEWNAN II, INC.

BOGGS, Judge.

Matthew and Shanna Edel appeal from the trial court's grant of summary judgment to Southtowne Motors of Newnan II, Inc. ("Southtowne") in this action stemming from the sale of a used vehicle. The Edels assert that the trial court erred in granting Southtowne summary judgment on their claims under Georgia's Fair Business Practices Act ("FBPA"), OCGA § 10-1-390 et seq., and on their claims for fraud, violation of the "Georgia Used Car Dealer Statute," and revocation of acceptance under OCGA § 11-2-608. For the following reasons, we affirm in part and reverse in part.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We apply a de novo standard of review to an appeal from the grant of summary judgment, construing the evidence in the light most favorable to the nonmovant." (Citations omitted.) *Sheats v. Kroger Co.*, 336 Ga. App. 307, 308 (784 SE2d 442) (2016). So viewed, the evidence showed that Matthew and Shanna Edel purchased a used 2010 Chevrolet Equinox from Southtowne on August 6, 2013. They took possession of the vehicle the next day on August 7. One year later, when the Edels sought to trade in the Equinox for another vehicle at another dealership, they were told that the Equinox had previously been in an accident and was a "lemon buy back."[1] A few months later, on October 22, 2014, they filed suit against Southtowne asserting violations of the FBPA and the "Georgia Used Car Dealer Statute," breach of the implied warranty of merchantability, and a claim for revocation of acceptance. The Edels' amended complaint added a count of fraud and a count of negligence against Southtowne. They alleged that they were never informed *before* purchasing the vehicle that it was a manufacturer's buyback vehicle, that they were told that the vehicle had not been in

---

[1]Southtowne's general manager and co-owner averred that "[a] manufactuer's buyback is a vehicle that has been repurchased pursuant to a consumer warranty laws due to an alleged defect or non-conformity."

2

any accidents, and that a Southtowne representative showed them a Carfax report affirming this statement. The Edels assert that they would have never purchased the vehicle had they known it was a manufacturer buyback (that had previously been in an accident), and that the vehicle's market value was substantially impaired.

Southtowne moved for summary judgment asserting that the Edels' claims fail because the vehicle's buyback status and accident history were disclosed to them in documents bearing their signatures and that they therefore cannot rely upon any alleged oral representations. The trial court agreed, finding that the Edels admitted that the disclosures contained their signatures and that they had an opportunity to read them but failed to do so.

On appeal, the Edels assert that the trial court erred in concluding that they failed to state a claim for revocation of acceptance under OCGA § 11-2-608, and erred in granting Southtowne summary judgment on their FBPA claim alleging the deceptive sale of a warranty. The Edels argue further that the court erred in granting summary judgment to Southtowne on their claims for violations of the FBPA and the "Georgia Used Car Dealer Statute," and their claims for fraud and revocation of acceptance, in reliance on post-sale disclosures of the accident history and buyback

status, and despite their being told before purchasing the vehicle that it had not been in an accident and were shown a Carfax report to confirm that fact.[2]

1. *Revocation of acceptance claim*. The Edels argue that the trial court erred in finding that they failed to state a claim for revocation of acceptance under OCGA § 11-2-608. They contend that they "revoked their acceptance of the vehicle via written letter, [and] Southtowne . . . failed and refused to honor" the revocation.

OCGA § 11-2-608 provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and

---

[2]This appeal does not involve claims under Ga. Comp. R. & Regs. r. 122-23-.01 (Reacquired Vehicle Nonconformity Disclosure Form). See Ga. Comp. R. & Regs. r. 122-23-.02 (Return, Transfer, and Resale of Reacquired Vehicle).

before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

In this case, the Edels should have known of the facts forming the basis of their revocation of acceptance of the vehicle – the buyback status and the accident history – when they signed the disclosures acknowledging those facts on August 7, 2013. They admitted they did not read the disclosures when they were asked to sign them. Matthew Edel testified:

> [T]hey had us come back the next day to do more paperwork, had it all quick to go, ready to go, came in, hey, sign all these, here's the car, had it parked out front on top of the curb, ready to go, said all right, let's get you through and get your on your way . . . I felt that at a franchise dealership it wasn't something that they would be offering me - - I wouldn't have to worry about it. It wasn't something that crossed my mind of that would be a buyback vehicle for me to have that worry.

Nevertheless, "[o]ne signing a written document without reading it, unless prevented from doing so by fraud or artifice . . . is chargeable with knowledge of its contents." (Citations and punctuation omitted.) *Carrion v. Smokey, Inc.*, 164 Ga. App. 790, 791

5

(298 Ga. App. 584) (1982). And the "mere allegation that [the] defendant was in a hurry [is] insufficient to excuse plaintiffs from reading documents." (Citation omitted.) *Legacy Academy v. Mamilove LLC*, 297 Ga. 15, 18 (1) (771 SE2d 868) (2015).

The Edels attempted to revoke their acceptance of the vehicle on September 3, 2014, more than a year after they should have discovered the claimed nonconformity and one month before they filed suit, and after driving the vehicle 26,000 miles. OCGA § 11-2-608 (2) requires that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods." We recognize that "whether reasonable notification was given to the seller . . . [is] ordinarily [a] matter[ ] for the trier of fact." (Citation and punctuation omitted.) *Paulk v. Thomasville Ford Lincoln Mercury*, 317 Ga. App. 780, 785 (4) (732 SE2d 297) (2012). But the 13-month delay here after a substantial change in the condition of the vehicle is unreasonable as a matter of law. Id. at 785-786 (4) (attempted revocation unreasonable after plaintiffs drove car for six months and put thousands of miles on car); see also, e. g., *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 911-912 (2) (600 SE2d 841) (2004) (plaintiffs failed to promptly rescind where delay was

6

nearly nine months). We therefore affirm the trial court's grant of summary judgment on the Edels' revocation of acceptance claim.[3]

2. *FBPA claim - sale of supplemental warranty.* The FBPA provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are . . . unlawful." OCGA § 10-1-393 (a). The Edels assert that "it was an unfair business practice for Southtowne to sell to them a Warranty Solutions warranty which specifically excludes manufacturer buy back vehicles." Southtowne presented the affidavit of its part-owner and an attached letter from the warranty company to explain that notwithstanding the buyback vehicle exclusion in the warranty, the vehicle would be covered under the warranty because the "manufacturer's powertrain warranty was still in force." The Edels respond that the trial court improperly relied upon hearsay in considering the letter attached to the affidavit. As Southtowne points out, however, this claim fails because the Edels have not shown that they suffered any damages under the proper measure of damages.

> Although the FBPA provides administrative remedies for any violation
> of the Act, a private right of action is available only to a person who

---

[3]Although the trial court did not rule on this ground, we "will affirm a grant of summary judgment if it is right for any reason raised below." (Citation omitted.) *McPherson v. McPherson*, 307 Ga. App. 549, 550 (1) (705 SE2d 314) (2011).

7

suffers injury or damages as a result of a violation. Accordingly, we have held that to prevail on a private cause of action under the FBPA, a private individual must establish three elements: a violation of the Act, causation, and injury. We have consistently held that in accordance with the statutory requirements of the FBPA, the measure of damages to be applied for an FBPA violation is that of actual injury suffered. The general provisions of OCGA § 51-12-2 (a) damages recoverable without proof of amount are not applicable. *Actual damages, for purposes of the FBPA, means relief other than the refund of the purchase price and restitution*.

(Citations and punctuation omitted; emphasis supplied.) *Small v. Savannah Intl. Motors*, 275 Ga. App. 12, 16 (4) (619 SE2d 738) (2005). As the Edels admit, they have made no claim under the warranty (and been denied), made no repair other than that made by Southtowne at no charge, nor otherwise shown an "actual injury suffered." The only relief they could seek under the facts here is a refund of the purchase price of the warranty. They have therefore failed to show "actual damages" on this ground to sustain an action under the FBPA. See id. The trial court did not err in concluding that this claim fails.

3. *Fraud and FBPA claims - sale of vehicle.*[4] "To make out a claim at common law for fraud, a plaintiff must show not only that he relied upon some misrepresentation, but he must show as well that his reliance was reasonable. The same is true of a claim under the Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq., for consumer fraud." (Citations, punctuation and footnotes omitted.) *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156, 156-157 (766 SE2d 24) (2014). And "[w]hether it was reasonable for one to rely upon a certain misrepresentation is generally a question for a jury, although in some cases, the answer may appear so clearly that the question can be decided by a court as a matter of law." (Citations omitted.) Id. at 157.

The Edels asserted through their deposition testimony that before they signed the sales agreement and retail installment sale contract on August 6, a representative of Southtowne told them that the vehicle had not been in an accident and showed

---

[4]The Edels also asserted a claim for violation of the "Georgia Used Car Dealer Statute" citing OCGA § 43-47-10 (1) (C) and (D). But this subsection is part of the Used Motor Vehicle Dealers' and Used Motor Vehicle Parts Dealers' Registration Act (OCGA § 43-47-1 et seq.), a licensing and regulatory act, which is inapplicable here as that subsection governs fines and penalties that may be imposed (upon a verified complaint from "any person") upon a licensee if a majority of the members of the state board of registration find that the licensee made a substantial misrepresentation or false promise.

9

them a Carfax report revealing no accidents. Shanna Edel testified that they did not take possession of the vehicle that day "[b]ecause [Southtowne] had to take it in for detailing and it was getting late that night, so they had to take it in to get all of the detailing done to it before they gave it to us." When they returned to pick up the vehicle the next day, on August 7, they were presented with several documents to sign one of which was a "Vehicle Condition Notice" which disclosed that the vehicle was a "Lemon Law/Manufacturer or OEM Buyback Vehicle." This notice shows a handwritten date of "8/6/13" under both signatures. The Edels claim, however, that despite the date shown, they did not sign this document until August 7.

The Edels also claim that August 7 was the date they signed the bottom of a document entitled "Your AutoCheck Vehicle History Report," which revealed that the vehicle had been previously involved in an accident. No date is provided with their signatures, but "Report Run Date:2013-08-06" is pre-printed at the top of the first page under the vehicle year, make and model. The Edels admit that they signed these documents without reading them on August 7, explaining that Southtowne "had them all prepped on the table, labeled with blue and pink, sign here. We signed quickly and they said we just want to get you through so you can get your vehicle

10

because we waited the day before so long. We signed everything, and they did not provide any of the documentation to take home."

Southtowne argues that certain other documents, that the Edels do not dispute were signed on August 6, preclude reliance on any alleged oral representations made the same day. Specifically, language in the sales agreement that "VERBAL PROMISES ARE NOT BINDING," the merger clause in the retail installment sale contract that "[t]his contract contains the entire agreement between you and us relating to this contract," and a statement in the "AS-IS NO WARRANTY" notice that "[s]poken promises are difficult to enforce. Ask dealer to put all promises in writing." While the merger clause provides that the retail installment sale contract is the entire agreement between the parties, the contract itself makes no representations concerning the accident history or buyback status of the vehicle. And although the sales agreement and "AS-IS NO WARRANTY" notice make reference to *verbal* representations, the Edels testified that they also relied on the Carfax report presented to them by Southtowne that revealed no accidents. "Accordingly, this is not a case in which reliance on all precontractual representations was rendered unreasonable as a matter of law" by a merger clause or disclaimer. See *Raysoni*, supra, 296 Ga. at 159 (plaintiff alleged he relied on Carfax report provided by dealer).

11

Southtowne, citing OCGA § 11-2-401 (2), argues that even if the Edels signed the disclosures the day after signing the sales agreement and retail installment sale contract, "the sale was not complete until they took physical possession of the vehicle on August 7, 2013." But that Code section provides that *title* passes to the buyer "at the time and place at which the seller completes his or her performance with reference to the physical delivery of the goods." Here, the issue is not whether title had passed to the Edels when they signed the disclosures. Indeed once the Edels signed the sales agreement and retail installment sale contract on August 6, they were then bound by them even though they did not take possession of the vehicle until the next day. The issue here is whether the disclosures were made before or after they were bound by those agreements.[5]

Because the evidence is in conflict regarding the timing of the disclosure of the vehicle's accident history, we cannot say that reliance on any oral representations was unreasonable and therefore inadequate to sustain a fraud or FBPA claim. And, because the evidence is in conflict concerning the timing of the disclosure of the

_____

[5]It is true, as Southtowne argues, that parol evidence cannot vary the terms of a valid written agreement. See OCGA § 24-3-1; see also OCGA § 11-2-202. But the Edels' testimony does not attempt to vary the terms of the sales agreements, but rather creates an issue of fact concerning the disclosure of information affecting their decision to purchase the vehicle.

12

vehicle's status as a buyback vehicle, we cannot say as a matter of law that Southtowne did not engage in a deceptive act prohibited by the FBPA. As issues of fact remain, the trial court erred in granting summary judgment on the Edels' fraud and FPBA claims on the sale of the vehicle.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Rickman, J., concur.*