**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 15, 2016**

# In the Court of Appeals of Georgia

A16A0784. BENDER et al. v. SOUTHTOWNE MOTORS OF
    NEWNAN II, INC. et al.

McMILLIAN, Judge.

This case involves issues of first impression concerning the application of the

Georgia Lemon Law, OCGA § 10-1-780 et seq., which is designed to protect certain

purchasers of "nonconforming"[1] motor vehicles, sometimes referred to as "lemons"

or "lemon vehicles." Alleging that Southtowne Motors of Newnan II, Inc.

("Southtowne") violated the Georgia Lemon Law when it sold them a 2010 Hyundai

Genesis without disclosing that it had been reacquired by the manufacturer because

---

[1] Under the Georgia Lemon Law, a "'[n]onconformity' means a defect, a serious safety defect, or a condition, any of which substantially impairs the use, value, or safety of a new motor vehicle to the consumer or renders the new motor vehicle nonconforming to a warranty. A nonconformity does not include a defect, a serious safety defect, or a condition that is the result of abuse, neglect, or unauthorized modification or alteration of the new motor vehicle." OCGA § 10-1-782 (17).

of defects, plaintiffs/appellants Lindsey and Cory Bender ("plaintiffs" or "Benders") filed suit against Southtowne and Ally Financial ("Ally")[2] (collectively "defendants" or "appellees") stating claims for, among other things, rescission, revocation of acceptance, fraud and deceit, and violation of the Georgia Fair Business Practices Act of 1975 ("FBPA"), OCGA § 10-1-390 et seq. The trial court granted summary judgment to the defendants on all the Benders' claims, and the Benders filed this appeal.[3]

Viewing the evidence in the light most favorable to the Benders as the nonmoving party on summary judgment,[4] the record shows that the Benders went to Southtowne to look at cars on January 15, 2012, and became interested in a Hyundai Genesis. They told the salesman, Buck Bush, that they liked a particular Genesis they saw on the lot, but that it was out of their price range; they also were informed that

---

[2] Ally financed the purchase of the vehicle.

[3] The Benders also brought claims for breach of implied warranty of merchantability; breach of warranty of title; and Ally's violation of Federal Trade Commission Rules. The Benders do not enumerate any error regarding the grant of summary judgment on these claims and, accordingly, they are waived on appeal. OCGA § 5-6-40; *Smith v. Saulsbury*, 286 Ga. App. 322, 323 (1) (a) (649 SE2d 344) (2007); *Dole v. State*, 256 Ga. App. 146, 148 (2) (567 SE2d 756) (2002).

[4] *Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 378 (774 SE2d 197) (2015).

someone else was already in the process of purchasing the vehicle. Bush told them about another Genesis he thought might interest them that had recently been delivered to the dealership, and he brought the vehicle from the back of the lot where it was parked for the Benders to see. The Benders took the Genesis for a test drive, and after they drove the vehicle, they looked under the hood and made a cursory examination of the vehicle. The Benders did not detect any problems with the vehicle but asked to see a Carfax report. Bush told them he had seen the Carfax and that it was clean, but Bush did not provide them with the written report, and the Benders did not make any further requests to see it. The Benders did, however, continue to express concern that this Genesis was also out of their price range, and Buck assured them "he could do a super deal" because it was a lease turn-in, telling them they were "very, very lucky because this is a once in a lifetime [deal]."

The Benders decided to purchase the vehicle and were taken to another Southtowne employee who was responsible for handling the financing and other paperwork. Among the papers they were asked to sign was a form titled "Illinois Resale Disclosure Statement" ("Illinois Disclosure Form"), which stated that the Genesis had been repurchased by the manufacturer, Hyundai Motor America ("HMA") "pursuant to consumer warranty laws due to [certain listed]

3

defect(s)/nonconformit(ies)."[5] The Benders testified they briefly reviewed the form and admitted they knew when they signed it that the Genesis had been repurchased by the manufacturer because of the stated defects.[6] Lindsey also acknowledged that she asked if the defects had been repaired, and the Benders accepted the assurances that the defects had been remedied.

Approximately a week to a week and a half later, Bush called Lindsey and told her that they needed to execute an additional "loan document." Cory went to the dealership, where Bush met him in the parking lot with a form he said was needed to complete the loan. Cory testified that Bush told him that he had filled in the form because he knew Cory was in a rush, and that Bush never took his hand off the form while he was signing it. Cory testified that he signed the form without reading it, and it was not until later that he learned the form he signed was the "Georgia Lemon Law

---

[5] The form listed an inoperative front window and an inoperative back up camera as the nonconformities that precipitated the buyback by HMA.

[6] Lindsey testified that the documents were signed in a hurry because it was past the normal closing time for the dealership, but no evidence was presented that they were prevented from taking more time to read the form.

Notice for Reacquired Vehicles" ("Georgia Lemon Law Form"), which had been backdated to the date of purchase of the Genesis.[7]

Almost eight months later, over Labor Day weekend, Cory Bender went to a Lexus dealership to look at a vehicle he was interested in buying. He told the Lexus salesman he wanted to trade in the Genesis to buy the Lexus, but after making an inquiry, a Lexus manager told him that the Genesis had a "branded"[8] title and that the Lexus dealership did not accept trades of branded title vehicles. Cory said this was the first time he knew that the title to the Genesis was branded and the first time anyone had explained to him the meaning of a branded title.

Cory left the Lexus dealership, and both Lindsey and he went immediately to Southtowne to inquire about the branded title. Lindsey testified that she first spoke

---

[7] Although the Georgia Lemon Law disclosure form states that "I understand that ... if I purchase or lease [the reacquired vehicle], I will be given this original Notice, and not a copy," Cory was not given the original or a copy of the form at the time he signed it.

[8] The manager apparently was referring to the original Texas title for the vehicle, which contained the notation "Manufacturer Buyback." The Georgia certificate of title did not contain any notation that the vehicle had been repurchased by the manufacturer, and neither the Georgia Lemon Law nor the Georgia Motor Vehicle Certificate of Title Act ("Title Act"), OCGA § 40-3-1, et seq., require motor vehicle titles issued in Georgia to denote that a vehicle has been repurchased by the manufacturer, although the Title Act does require titles to be branded in instances of "salvage" or "rebuilt" vehicles. See OCGA § 40-3-36 (d).

5

to Bush, who told her he did not know the title was branded. The paperwork pertaining to the sale of the vehicle was shown to the Benders, including the Illinois Disclosure Form they signed at the time of purchase and the Georgia Lemon Law Notice Cory signed a few weeks later, but Southtowne did not produce the title to the vehicle.[9] The Benders subsequently retained an attorney, and on October 24, 2012, their attorney sent a letter to Southtowne seeking rescission of the purchase and a refund of the purchase price, following which they would return the vehicle to the dealer. Southtowne did not agree to the terms stated in the letter, and the Benders filed this lawsuit.

1. We turn first to the Benders' claims that Southtowne violated the Georgia Lemon Law and the Georgia FBPA by failing to make the disclosures required by OCGA § 10-1-790 (a) of the Georgia Lemon Law statute. Because there is a dearth of authority on the Georgia Lemon Law, we start by setting out the statutory framework.

---

[9] The Benders testified that the first time they actually saw the Texas title was after this lawsuit was filed.

The Georgia Lemon Law, which became effective January 1, 2009,[10] was passed by the General Assembly "to create a procedure for expeditious resolution of complaints and disputes concerning nonconforming new motor vehicles, to provide a method for notifying consumers of their rights under this article, . . . to ensure that consumers receive information, documents, and service necessary to enable them to exercise their rights under this article[,] to encourage manufacturers to take all steps necessary to correct nonconformities in new motor vehicles and to create the proper blend of private and public remedies necessary to enforce this article." OCGA § 10-1-781. In addition to the statutory provisions enacted to effectuate these goals, OCGA § 10-1-795 authorizes the "Attorney General[11] to promulgate rules and regulations and establish procedures necessary to carry into effect, implement, and enforce the provisions of this article," and the pertinent rules and regulatory provisions are compiled at Ga. Comp. R. & Regs., r. 122-23-.01 et seq.

---

[10] A slight, non-substantive amendment was made to the law in 2015 but does not effect our analysis in this case. See Ga. L. 2015, p. 1088, § 8/SB 148.

[11] "Attorney General" was substituted for "administrator" in a 2015 amendment. Although this change occurred after the purchase of the Genesis, for ease of reference we will use "Attorney General."

The statute protects two distinct classes of motor vehicle purchasers: (1) consumers[12] who buy *new* motor vehicles *in this state*[13] that are discovered to be nonconforming, see OCGA §§ 10-1-782 (15), (17); 10-1-784; 10-1-785; 10-1-787, and (2) purchasers of vehicles that have been reacquired by the manufacturer under the provisions of the Georgia Lemon Law or a similar statute of another state and are being re-sold in Georgia by the manufacturer, a new car dealer, or other transferor. OCGA § 10-1-790 (a).

The Georgia Lemon Law's general enforcement provisions are contained in OCGA § 10-1-793, which makes violations of the Georgia Lemon Law "an unfair and deceptive act or practice in the conduct of consumer transactions under . . . the

---

[12] As used in the Georgia Lemon Law, "'consumer' means . . . : (A) A person who purchases or leases a new motor vehicle for personal, family, or household use and not for the purpose of selling or leasing the new motor vehicle to another person; and (B) A person who purchases or leases ten or fewer new motor vehicles a year for business purposes other than limousine rental services." OCGA § 10-1-782 (5).

[13] A "new motor vehicle" is defined in OCGA § 10-1-782 (15) as "any self-propelled vehicle primarily designed for the transportation of persons or property over the public highways that was . . . purchased . . . in this state by the consumer or lessor to whom the original motor vehicle title was issued." Pursuant to OCGA §10-1-784 (3), purchasers or lessors of nonconforming new motor vehicles that have not been repaired after a reasonable number of attempts have the option of requiring the manufacturer to repurchase or replace the vehicle. The Georgia Lemon Law does not require manufacturers to buy back a vehicle that has changed hands from the original, first-title purchaser.

[FBPA]." Importantly, however, the Attorney General is tasked with primary responsibility for enforcement of the statute, and except as provided in subsection (a) of Code Section 10-1-790, [the Georgia Lemon Law] shall not be enforceable through private action under Code Section 10-1-399 [of the FBPA]." In other words, under the plain language of the statute, only violators of OCGA § 10-1-790 (a) are subject to a private claim under the FBPA. Accordingly, to maintain their FBPA claim under the Georgia Lemon Law, the Benders must show that Southtowne failed to comply with OCGA § 10-1-790 (a) when it sold them the Genesis. OCGA § 10-1-790 (a) provides:

> (a) No manufacturer, its authorized agent, new motor vehicle dealer, or other transferor shall knowingly resell, either at wholesale or retail, lease, transfer a title, or otherwise transfer a reacquired vehicle, including a vehicle reacquired under a similar statute of any other

9

state,[14] unless the vehicle is being sold for scrap and the manufacturer has notified the Attorney General of the proposed sale or:

(1) The fact of the reacquisition and nature of any alleged nonconformity are clearly and conspicuously disclosed in writing to the prospective transferee, lessee, or buyer; and

(2) The manufacturer warrants to correct such nonconformity for a term of one year or 12,000 miles, whichever occurs first.

A knowing violation of *this subsection* shall constitute an unfair or deceptive act or practice in the conduct of consumer transactions under Part 2 of Article 15 of Chapter 1 of Title 10 and will subject the violator to an action by a consumer under Code Section 10-1-399.

---

[14] In this particular case, the manufacturer bought back the vehicle in Texas, and Southtowne purchased the vehicle on January 10, 2012, at a "closed" auction, in which only franchised Hyundai dealers or their agents were permitted to buy the vehicles offered for sale, which included "Lemon Law and vehicles voluntarily repurchased by HMA." Pursuant to the written "Auction Sales Policies and Procedures," Hyundai dealers who purchased vehicles at the auction were required to acknowledge they were purchasing a buyback vehicle by signing a notice of nonconformity and had to agree that only they, the dealer, would sell the vehicle to the "ultimate consumer." Further, the Auction Policies required the dealer to "bear[] sole responsibility for providing full disclosure to the ultimate consumer and securing purchaser's acknowledgment by signing the Notice of Nonconformity Statement provided," which in this case was the Illinois Disclosure Form. The Illinois Disclosure Form also provided that "[t]he signature of the dealer representative constitutes agreement by the dealer that disclosure of the above information will be made to the retail customer at the time of sale of this vehicle as provided by law in the state in which it is resold."

(Emphasis supplied.)

Relying on this Court's opinion in *Walker v. Southtowne Motors of Newnan II, Inc.*, 330 Ga. App. XXVIII (Case No. A14A0964, decided Nov. 21, 2014) (unpublished), the trial court found that Southtowne was not required to comply with OCGA § 10-1-790 (a) when it sold the car to the Benders because it was sold as a used car and thus did not fit the definition of a "reacquired" vehicle within the meaning of the Georgia Lemon Law.[15] At the outset, we note that the trial court's reliance on our unpublished opinion was misplaced. Such an "unreported opinion is lacking in value as precedent and is not binding on lower courts. . . ." (Citation and punctuation omitted.) *Dept. of Transp. v. Metts*, 208 Ga. App. 401, 401 (1) (430 SE2d 622) (1993). Georgia Court of Appeals Rule 33 (b) ("An unreported opinion is neither a physical or binding precedent but establishes the law of the case as provided by OCGA § 9-11-60 (h)."). Additionally, there are significant differences between the facts of *Walker* and this case. In *Walker*, the plaintiff was not the first purchaser of the vehicle following the manufacturer's reacquisition, the dealer had acquired the

---

[15] A "reacquired vehicle" is defined as "a new motor vehicle with an alleged nonconformity that has been replaced or repurchased by the manufacturer[.]" OCGA § 10-1-782 (21). A "'new motor vehicle' does not include any vehicle on which the title and other transfer documents show a used, rather than new, vehicle." OCGA § 10-1-782 (15).

11

vehicle after the first purchaser traded it in almost three years after the purchase, and there was a question concerning whether the dealer even knew the vehicle had been reacquired by the manufacturer. Thus, *Walker* is factually inapposite to this case.

Georgia's Attorney General has filed an amicus brief in this case, asserting that the General Assembly may have used the term "reacquired" in OCGA § 10-1-790 to denote that only vehicles that were new *when they were repurchased by the manufacturer* are covered by the Georgia Lemon Law disclosure requirements since in Georgia manufacturers can only be forced to reacquire new motor vehicles, which may not be the case in other states. We need not parse that argument here since the parties do not dispute that the Genesis was new when it was repurchased by HMA in Texas, and thus under the facts of this case, it is clear that the Genesis falls within the definition of a "reacquired vehicle" as used in OCGA § 10-1-790 (a), even though it was classified as a "used" vehicle on the subsequently issued Georgia title.

Having determined the Georgia Lemon Law disclosure requirements contained in OCGA § 101-790 (a) applied to the sale of the Genesis, we must then answer the question of whether the notice given on the Illinois Disclosure Form[16] was sufficient

---

[16] The trial court found that the notice given on the Illinois Disclosure Form complied with the "purpose" of the disclosure requirements. We note that the notice given on the Georgia Lemon Law Disclosure Form was sufficient, but this notice was

12

under OCGA § 10-1-790 (a). That section, on its face, mandates only that a seller of a reacquired vehicle provide clear and conspicuous written notice of the "fact of the reacquisition and nature of any alleged nonconformity . . . to the prospective transferree, lessee, or buyer." Reviewing the Illinois Disclosure Form, we have little hesitancy in concluding that the Benders were clearly and conspicuously informed in writing that the Genesis had been reacquired by the manufacturer and of the nature of the defects which precipitated the reacquisition. Moreover, the Benders testified they read the form, albeit hurriedly, and sought confirmation that the defects had been repaired,[17] leaving no question that the Benders had actual notice at the time of sale that the vehicle they were purchasing had been reacquired by the manufacturer because it was defective.

Nevertheless, the Benders argue the disclosure made on the Illinois Disclosure Form was insufficient under Georgia law because our Lemon Law rules and regulations, promulgated pursuant to the authority contained in OCGA § 10-1-795, impose additional requirements not contained in the statute, including that the

not timely provided to the Benders.

[17] There does not appear to be any issue here concerning whether the repairs had actually been made, and the Benders apparently never experienced any problems attributable to the "defects" in the vehicle.

disclosure be made on a particular "form." The applicable regulations provide as follows:

> (1) A reacquired vehicle shall not be subject to transfer, lease, or sale, either at wholesale or retail, by any person having knowledge of such fact, unless the following conditions are met:

> (a) At the time of each transfer of the reacquired vehicle, the transferor shall ensure the transferee receives [the form];[18]

> (b) If a reacquired vehicle is transferred to a dealer or lessor for re-sale, the signature of the dealer or lessor to whom the vehicle is transferred shall constitute an agreement to disclose all information contained on the form to the ultimate consumer before the sale or lease of the reacquired vehicle; and

> (c) Prior to selling or leasing a reacquired vehicle, the selling dealer or lessor shall give the ultimate consumer the opportunity to read the form in its entirety. The ultimate consumer shall sign and date the form. The selling dealer or lessor shall provide the ultimate consumer with a copy of the completed and signed form.

---

[18] The Benders incorrectly quote the version of the regulation currently in effect, which makes reference to the form specified in Ga. Comp. R & Regs., r. 122-23-.01. Although the prior version omitted this specific reference, it is clear that this is also the "form" referred to the regulation in effect at the time the Benders purchased the Genesis.

(2) When the reacquired vehicle is sold or leased to the ultimate consumer, the manufacturer shall activate the warranty required pursuant to OCGA § 10-1-790 (a) (2). The manufacturer or its authorized agent shall provide a copy of the form to the Administrator within thirty days (3) days from the date or fo the sale or lease.

Ga. Comp. R. & Regs., r. 122-23-.02. (2011)

The "ultimate consumer" is defined in Ga. Comp. R. & Regs., r. 122-17-.01 (17) as "the first person who purchases or leases a reacquired vehicle for purposes other than resale or sublease."

Here, there is no question that the Benders were the "ultimate consumer[s]" of the Genesis. Thus, reading the statute and regulations together, the Benders argue that Southtowne was required to give notice on a Georgia form prior to[19] the sale of the vehicle, *and* to give them the form at the time it was signed.[20] Further, they argue that pursuant to OCGA § 10-1-790 (a), Southtowne's failure to comply with these rules constituted a per se violation of the FBPA enforceable by them in this private lawsuit.

---

[19] The Benders and the Attorney General in his Amicus brief seem to suggest that notice be given prior to the time the sale has been agreed to and the paperwork is being signed, not contemporaneous with the signing of the purchase papers.

[20] Without elaborating, the Benders also assert that failure to notify them of the branded Texas Title violated certain federal odometer laws and OCGA § 11-2-312 respecting title warranties. Pretermitting whether these arguments were raised below, the text of these statutes do not support their argument.

We agree with the Benders that the rules and regulations do in fact impose these additional requirements on Southtowne, and it is clear that violators may be subject to an enforcement action by the Attorney General. We cannot agree, however, that the failure to follow the regulations authorizes a private party to bring a cause of action asserting a FBPA claim against the violator. Under the plain language of the Georgia Lemon Law, the only violation of the Georgia Lemon Law that authorizes a private party to bring a FBPA claim is the failure to give the disclosures required by 10-1-790 (a).[21] And OCGA § 10-1-790 (a) (1) requires only plain and conspicuous written notice; there is no requirement that the notices required by subsection (a) be given on a particular form.[22] Likewise, there is no requirement that the form be given to the purchaser, and no particular timing requirement, as long as notice is provided before the sale of the vehicle is complete. Further, the fact that the statute specifically

[21] We note that while OCGA § 10-1-792 (a) provides that "[e]xcept as provided in subsection (a) of Code Section 10-1-790, this article shall not create or give rise to any cause of action by . . . consumers against new motor vehicle dealers," that section specifically carves out violations of OCGA § 10-1-790 (a), which subjects violators to consumer actions.

[22] This is in contrast to subsection (c) and (d) of that section, which impose additional requirements on a manufacturer who sells a vehicle after reacquisition, including the use of "forms approved by the Attorney General." OCGA § 10-1-790 (d). If the legislature had intended disclosures by parties other than the manufacturer to be made on a particular form, clearly it could have said so.

16

authorizes the enactment of the rules and regulations to implement and enforce the provisions of the statute does not mean this language can be read more expansively than the plain terms allow. Even where a rule is authorized, it must not exceed the scope of or be inconsistent with the authority of the statute upon which it is predicated. *Ga. Dept. of Community Health v. Dillard*, 313 Ga. App. 782, 785 (1) (723 SE2d 23) (2012). Reading the statutory provisions together, it does not appear that the legislature intended to authorize retail purchasers to bring private causes of action under the FBPA against transferors who clearly and conspicuously disclose at the time of sale that they are selling a manufacturer buyback vehicle, but simply fail to do so on a particular form or fail to give the form to the purchaser once they have signed it.

Apart from Southtowne's failure to use the proper form, the Benders also contend that Southtowne violated OCGA § 10-1-790 (a) by failing to give them notice of the one-year, 12,000 mile warranty to cover the nonconformities. We first note that the statute does not specify what notice must be given about the warranty, and the Benders do not dispute that upon inquiry, they were correctly told that HMA had already corrected the defects listed in the Illinois Disclosure Form. Nor have the

17

Benders produced any evidence to support a claim that the warranty was not in effect had they experienced any problems with the defective parts of the vehicle.

Accordingly, for the foregoing reasons, the trial court's grant of summary judgment on the Benders' claims under the Georgia Lemon Law and the FBPA must be affirmed.

2. Next, the Benders contend that the trial court erred by granting summary judgment on their claim for fraud and deceit "where the dealer not only provided false information but also was under an affirmative statutory obligation to provide full information," pointing to Bush's claim that he had seen the Carfax report and it was clean in response to their specific inquiry, and other "affirmative statements" presumably referring to Bush's statement that the car was a great deal because it was a lease turn-in.

To prevail on a claim for fraud and deceit, a plaintiff must show: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or to refrain from acting; (4) justifiable or reasonable reliance; and (5) damage. *Paulk v. Thomasville Ford Lincoln Mercury*, 317 Ga. App. 780, 782 (1) (732 SE2d 297) (2012); see also *Raysoni v. Payless Auto Deals, LLC,* 296 Ga. 156 (766 SE2d 24) (2014). Thus, to make out a claim of fraud, a plaintiff generally must show both

18

reliance upon a misrepresentation, and the reliance was reasonable and not the product of a lack of due diligence. Id.; *Edel v. Southtowne Motors of Newnan II, Inc.*, 338 Ga. App. 376, 380 (3) (789 SE2d 224) (2016).

The Benders argue that because this case involves the breach of an affirmative statutory duty to disclose, not just a "simple misrepresentation," justifiable reliance may be shown simply by demonstrating a failure to disclose those matters required by law to be disclosed. However, as set forth in Division 1, Southtowne made the disclosures required by OCGA § 10-1-790 that the vehicle had been repurchased by the manufacturer because of certain defects. And the Benders have not pointed to any Georgia law that requires disclosure of a "branded" certificate of title issued in another state, which is presumably the additional information which would have been disclosed in the Carfax report.[23] Accordingly, even assuming the salesperson may have misrepresented that he had seen the Carfax report and it was "clean," the

---

[23] The Benders have not pointed us to the page in the record where the Carfax report noting the Texas branded title can be found, and we have not found it upon our review. We note, however, their expert submitted an affidavit stating that the Carfax report included information that the Texas title carried the warning "Manufacturer Buyback or Lemon Reported[,]" and the appellees do not appear to dispute that the Carfax would have noted that the Texas title was so branded. In any event, we will assume for the sake of this appeal that the Carfax would have disclosed the branded Texas title.

19

Benders have not supported their contention that there was an affirmative duty to disclose that the title was branded. Nor is there any merit to the Bender's argument that the dealer placed himself in a confidential relationship with them by agreeing to act on their behalf in transferring the title of the vehicle. See *Phillips v. Atlantic Bank & Trust Co.*, 168 Ga. App. 590, 591-92 (1983) ("Creditors deal with debtors at arm's length, and do not stand in a fiduciary capacity in relationship to the debtor.").

But the Benders can still make out a claim for fraud if they show they reasonably relied on the salesperson's misrepresentations that the Carfax report was "clean" and the vehicle was a lease turn-in, when in fact the vehicle was a manufacturer buyback and the Texas title was branded. The Benders are correct that generally reasonable reliance must be determined by the factfinder, as our appellate courts have had occasion to reiterate in three recent cases which also involved alleged misrepresentations made during the sale of an automobile. *Raysoni*, 296 Ga. at 156-57; *Edel*, 338 Ga. App. at 381 (3); *Alvear v. Sandy Springs Toyota, Inc.*, 332 Ga. App. 798, 799 (775 SE2d 172) (2015) (physical precedent only). For example, in *Raysoni*, the buyer questioned the dealer concerning whether the minivan he wanted to buy had ever been in an accident and was assured by the salesperson that it had not. The plaintiff then asked to see a Carfax report, which confirmed what he had been told.

*Raysoni*, 296 Ga. at 158. Similarly, in *Edel*, a representative of the car dealer told the buyers that the vehicle had not been in an accident and showed them a Carfax report which revealed no accidents. 338 Ga. App. at 376. And in *Alvear*, the buyer was provided with an odometer disclosure statement that misstated the mileage on the car he purchased, and when he asked the salesperson about the car's low mileage, she emphasized that feature of the car. 332 Ga. App. at 801-02 (1).

Here, the salesperson told the Benders that he had seen the Carfax report and it was clean and that the vehicle was a lease turn-in, which for the purposes of summary judgment we construe against Southtowne. Under the Georgia fraud statute, a "reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know such facts are false." OCGA § 51-6-2 (b); *Alvear*, 332 Ga. App. at 801 (1).[24] And Lindsey Bender explained that when she was confronted with the Illinois Disclosure Form, she thought it confirmed Bush's statement that the car was a great deal because it was a lease turn-in, and her understanding that "[w]ith a lease turn-in you hand back the keys and it goes back to the company." Further,

---

[24] For this reason, a jury must decide whether the representations were false and made with knowledge they were false. *Alvear*, 332 Ga. App. at 801-02 (1).

21

although the Benders signed certain documents disclaiming "verbal promises," the statements made to them were not "promises" but rather misrepresentations about the condition of the vehicle. And the "merger clause" stating "This contract contains the entire agreement . . . relating to this contract" was preceded in bold caps with the heading "HOW THIS CONTRACT CAN BE CHANGED" and simply required changes to the terms of the sale of the vehicle to be in writing.[25] The contract said nothing about the status or history of the vehicle. See *Edel*, 338 Ga. App. at 381 (3); *Campbell v. Beak*, 256 Ga. App. 493 (568 SE2d 801) (2002) (vehicle being sold "as is" does not require different result on question of diligence when nothing placed plaintiff on notice he was being deceived). Under these facts, we cannot say that reliance on the salesperson's misrepresentations were rendered unreasonable as a matter of law by the merger clause or disclaimer. See *Raysoni*, 296 Ga. at 159; *Edel*, 338 Ga. App. at 381 (3); *Alvear*, 332 Ga. App. at 801-02 (1). Whether the Benders could have by proper diligence discovered that the salesperson was not telling the truth, or whether they were as diligent as the circumstances warranted, must be determined by a jury. *Johnson v. GAPVT Motors, Inc.,* 292 Ga. App. 79, 82-83 (1) (663 SE2d 779) (2008); see also *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639,

---

[25] We note that the "AS IS" clause on the sales agreement was not initialed.

22

641 (1) (560 SE2d 101) (2002) (jury must decide whether buyer justifiably relied on salesperson's statement that the vehicle was a "demonstrator" and thus considered a "new" car, when the documentation he saw was conflicting and he could have believed the used language simply referred to the use by the dealership). As issues of fact remain, summary judgment on this claim must be reversed.

3. Lastly, the Benders contend the trial court erred by granting summary judgment on their claim for revocation of acceptance under OCGA § 11-2-608. That section provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>
> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>
> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not

23

caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

As to the timeliness of their revocation, the Benders point to their letter dated October 24, 2012, which was sent to Southtowne approximately six weeks after Cory became aware of the branded Texas title during his visit to the Lexus dealership, and argue that a jury should determine if their revocation occurred within a reasonable time. Further, because Southtowne rejected their revocation, they assert that a jury must also determine whether their continued use of the vehicle constituted a "reacceptance" after revocation. *Edel*, 338 Ga. App. at 378 (1) ("revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods.") (citation and punctuation omitted); *Mauk v. Pioneer Ford Mercury*, 308 Ga. App. 864, 867 (2) (709 SE2d 353) (2011) (factfinder must decide whether revocation was timely and whether buyer reaccepted goods after revocation). Pretermitting these issues, the record shows that Southtowne disclosed the vehicle's "nonconformity" to the Benders, the Benders purchased the car with actual

24

knowledge of the listed defects, the defects had been successfully repaired prior to purchase, and the Benders did not notice any performance issues attributable to the defects even though Cory Bender drove the car on a regular basis. Although the Benders later learned the Texas title also contained a notation that the Genesis was a manufacturer buyback, their discovery does not change these facts, and nothing changed about the condition of the vehicle after their acceptance that would warrant revocation based on any alleged "nonconformity." The only assurance that the dealer apparently gave the Benders about these defects was that the repairs had been made, which appears to have been true. Accordingly, the trial court did not err by granting summary judgment to the appellees on this claim. *Edel*, 338 Ga App. at 378-79 (1) (summary judgment proper where buyers should have known about the vehicle's buyback status when they signed disclosures day after the vehicle was purchased but waited over a year to revoke acceptance); *Paulk*, 317 Ga. App. at 785 (4) (summary judgment proper where plaintiffs noticed defects prior to purchasing the vehicle but drove car thousands of miles before attempting to revoke acceptance); *Bicknell v. B & S Enterprises, Inc.,* 160 Ga. App. 307, 309 (2) (287 SE2d 310) (1981) ("[g]iven the ease with which the plaintiff could have discovered the alleged nonconformance, . . . she had no grounds to revoke her acceptance of the automobile.").

*Judgment affirmed in part and reversed in part. McFadden, J., concurs. Miller, P. J., concurs fully in Divisions 1 and 3 and in judgment only as to Division 2.*