**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0200, A19A0201. TELA INVESTMENTS, LLC v. RAZAVI;
and vice versa.

MCFADDEN, Presiding Judge.

This case involves a residential lease agreement with an option to purchase between Tela Investments, LLC and Ehsan Razavi. The trial court granted Razavi's motion for summary judgment as to Tela's dispossessory action and claim for attorney fees under a lease provision, denied summary judgment to Tela as to Razavi's breach of contract and other counterclaims, and ordered Razavi to pay the option purchase price into the registry of the court. Because there are no genuine issues of material fact as to Tela's claims, but there are genuine issues of material fact as to Razavi's counterclaims, we affirm the trial court's summary judgment rulings.

And because ordering the payment of the option purchase price into the court registry defeats the parties' intent, we reverse that portion of the order.

1. *Facts and procedural posture.*

"Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." *Parke Town North Apartments v. Castro*, ___ Ga. App. ___ (1) (824 SE2d 730) (2019) (citation and punctuation omitted).

So construed, the evidence shows that in March 2009, Tela and Razavi entered into a residential lease agreement with an option for Razavi to purchase the house. The agreement provided that Razavi would pay a base monthly rental amount of $799, plus an additional rental amount based upon property taxes and hazard insurance. The residential lease agreement was amended in November 2014 to provide, among other things, that Razavi could exercise the option to purchase the property for $138,000 at any time prior to the expiration of the lease on May 30, 2017.

On October 21, 2016, counsel for Tela notified counsel for Razavi that the lease agreement was terminated because Razavi had failed to make required payments totaling $2,919. On November 1, 2016, Razavi delivered two checks to Tela's attorney, one check for the claimed arrearage of $2,919 and another for the November rent of $799. On November 30, 2016, Tela filed and served an affidavit for a dispossessory warrant, claiming that Razavi was still in possession of the house following Tela's termination of the lease. Razavi answered and counterclaimed for, among other things, breach of contract, specific performance, and fraud.

On January 11, 2018, Razavi filed a motion for summary judgment as to Tela's dispossessory action and claim for attorney fees, and Tela subsequently filed a motion for summary judgment as to Razavi's counterclaims. After a hearing, the trial court granted Razavi's motion, denied Tela's motion, and ordered Razavi to pay the full option purchase price of $138,000 into the court registry. Tela appeals in Case No. A19A0200, challenging the trial court's summary judgment rulings; and Razavi cross-appeals in Case No. A19A0201, challenging the trial court's order that he deposit the option purchase price into the registry of the court.

*Case No. A19A0200*

2. *Dispossessory action.*

3

Tela contends that the trial court erred in granting summary judgment to Razavi on its dispossessory action. We disagree.

> Where a lessee has breached a lease, the lessor is authorized to rescind the lease and summarily dispossess the lessee as a tenant holding over. . . . When a tenant fails to discharge his obligations under the lease, the landlord has the right, created by the lease itself, to terminate the lease. Once the landlord terminates the lease and the tenant refuses to vacate, the tenant becomes a tenant holding over beyond the term of the lease. The landlord has the right, at that point, to institute dispossessory proceedings . . . by making demand for possession.

*C & A Land Co. v. Rudolf Inv. Corp.*, 163 Ga. App. 832, 833 (296 SE2d 149) (1982) (citations omitted). Thus, the evidence in the instant case, construed in Tela's favor, supports Tela's right to seek to terminate the lease due to Razavi's alleged failure to make payments as required by the lease.

> However, if the lessor wishes to declare a forfeiture of the lease for nonpayment it is incumbent upon the lessor to return immediately upon receipt thereof any and all payments of rental received by the lessor after the happening of the event giving the landlord the right to declare the forfeiture. . . . Acceptance and retention of rentals by the lessor after the alleged breach or forfeiture constitutes a waiver and reinstates the lease. The fact that the lessor does not cash the check is immaterial. Assertions of forfeiture for nonpayment and retention of rentals are totally incompatible, and the lessor must take the effect of that which is most favorable to the tenant. In cases of doubt, in contests between landlords and tenants, the issue will be resolved in favor of the tenant.

Id. at 833-834 (citations and punctuation omitted).

4

Here, Tela accepted and retained Razavi's checks for the claimed arrearage after purportedly terminating the lease. So the trial court correctly found that Razavi was entitled to summary judgment on this basis. We note that Tela has ignored this basis for the trial court's ruling and has pointed to no evidence creating a genuine issue of material fact, instead focusing its argument on its attempt to terminate the lease based on the alleged default. See *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue). As this court has held in affirming summary judgment to a defendant-tenant under similar circumstances, "[w]here the landlord accepts rent from the tenant after the default but before the dispossessory proceeding, the landlord then has no right to institute dispossessory proceedings against the tenant during the ensuing period on account of the tenants' arrears in the payment of past due rent." *Kunian v. Mangel Stores Corp.*, 140 Ga. App. 244, 245-246 (1) (230 SE2d 492) (1976).

3. *Attorney fees.*

Tela enumerates that the trial court erred in granting summary judgment to Razavi on Tela's claim for attorney fees under the lease. Tela's brief in support of this

enumeration is deficient. Court of Appeals Rule 25 (a) (1) requires that an appellant's brief contain a statement of

> the material facts relevant to the appeal; a citation of the parts of the record or transcript essential to a consideration of the errors; and a statement of the method by which each enumeration of error was preserved for consideration. Record and transcript citations shall be to the volume or part of the record or transcript and the page numbers that appear on the appellate record or transcript as sent from the trial court.

Tela's brief does not contain a statement of the actual lease language relevant to this enumeration; any citation to the specific pages in the record where we can find the lease provision in question, the exact claim for attorney fees based on such a provision, or the court's contested ruling on this issue; or a statement of the method by which this enumeration was preserved for consideration.

> The rules of this court were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this court. Briefs that fail to provide proper [record] citations can hinder this court's consideration of the parties' arguments on appeal. And such deficient briefs are not merely an inconvenience but may constitute grounds for refusing to consider a party's contentions. While we will nonetheless review the claim[] of error to the extent we are able to ascertain [it, Tela] will not be granted relief should we err in construing [its] nonconforming appellate brief[].

*Cook v. Smith*, 349 Ga. App. 16 (1) (825 SE2d 439) (2019) (citations and punctuation omitted).

6

At the end of the trial court's 14-page order, it granted summary judgment to Razavi "as to Plaintiff's Lease-based attorney fees." We note that the order does not include the language of any such lease provision[1] or an explanation of a precise claim based on such a provision.

As to the attorney fees, the order states that under OCGA § 44-7-2 (c), "a provision for attorney fees in a residential lease is unenforceable if it is not mutual. It is undisputed that the Lease provision for attorney fees is not mutual. Instead, Plaintiff claims that OCGA § 44-7-2 (c) does not apply because the Lease is 'commercial in nature.' This argument is meritless for the reasons discussed above."[2]

Apparently, "the reasons discussed above" were findings that the house was used as Razavi's dwelling place. The trial court explained that the contract is

---

[1]Although it is not the duty of this court to cull the record on behalf of a party, see *Cook*, supra at 19 (4), having reviewed the original lease agreement, we note that it includes the following language in a special stipulations section: "Tenant agrees to pay fifteen percent (15%) attorney's fees on any part of said rental that may be collected by suit or by attorney after the same has become due."

[2] OCGA § 44-7-2 (c) provides: "A provision for the payment by the tenant of the attorney's fees of the landlord upon the breach of a rental agreement by the tenant, which provision is contained in a contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling place shall be void unless the provision also provides for the payment by the landlord of the attorney's fees of the tenant upon the breach of the rental agreement by the landlord."

7

denominated as a residential lease agreement, that the property is zoned as residential, that the lease provides that the house cannot be used in violation of the applicable zoning ordinance, that Tela insured the house as a dwelling, that Razavi has sworn that he used the property as a dwelling and it is listed as such on his driver's license, and that Tela has offered no probative evidence to the contrary.

On appeal, Tela argues that the residential lease agreement was not intended for the use of the house as a dwelling place but was in furtherance of a real estate investment. Of course, using a house as a dwelling and as an investment are not mutually exclusive. Regardless, as the trial court found, Tela has pointed to no probative evidence contradicting a finding that the house was intended for use as a dwelling place. Tela has failed to carry its burden of showing error by the record. See *Roach v. Roach*, 237 Ga. App. 264, 265 (514 SE2d 44) (1999) (appellant has the burden of showing error affirmatively by the record on appeal).

4. *Breach of contract claims.*

Tela enumerates that on "the cross motions for summary judgment on the parties' breach of contract claims arising from the Lease's termination, the trial court erred in denying summary judgment to Tela because the Lease and Option were properly terminated." But as explained above in Division 2, the trial court correctly

8

ruled that Tela could not terminate the lease while accepting payments under the lease terms. Tela has shown no error mandating reversal and entitling it to summary judgment.

5. *Failure to maintain.*

Tela enumerates that the trial court erred in denying summary judgment on Razavi's breach of contract counterclaim for failure to maintain the premises because the lease provides that Razavi has a duty to make certain repairs to the property. In rejecting Tela's motion for summary judgment on this counterclaim, the trial court ruled that OCGA §§ 44-7-2 (b) (1) & (2) provide that a landlord has a non-waivable and non-delegable duty to make repairs under a residential lease.

> OCGA § 44-7-2 (b) provides, in pertinent part:

> In any contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling place, a landlord or a tenant may not waive, assign, transfer, or otherwise avoid any of the rights, duties, or remedies contained in the following provisions of law: (1) Code Section 44-7-13, relating to the duties of a landlord as to repairs and improvements; [and] (2) Code Section 44-7-14, relating to the liability of a landlord for failure to repair[.]

Those code sections, OCGA §§ 44-7-13 and 44-7-14, provide, respectively, that "[t]he landlord must keep the premises in repair" and that "the landlord is responsible

9

for damages arising from defective construction or for damages arising from the failure to keep the premises in repair."

Once again, Tela argues that the rental house was not used as dwelling place and thus OCGA § 44-7-2 (b) is inapplicable. But as explained above, the trial court correctly found that the evidence shows without dispute that the house was used as a dwelling. And given the statutory mandates cited in the trial court's order, we agree with the trial court that there are, at the very least, genuine issues of material fact as to the failure to maintain counterclaim. Accordingly, summary judgment was properly denied.

6. *Specific performance.*

Tela contends the trial court erred in denying its motion for summary judgment as to Razavi's counterclaim for specific performance of the option to buy provision of the contract because Razavi failed to tender the option purchase price. However, there is a genuine issue of material fact as to whether the tender was excused.

> It is true that to be entitled to specific performance on a real estate contract, the purchaser must make an unconditional tender of the purchase money due. This tender is excused or waived where the seller, by conduct or declaration, proclaims that if a tender should be made, acceptance would be refused. The law does not require a futile tender or other useless act.

10

*Nowlin v. Davis*, 245 Ga. App. 821, 822 (1) (538 SE2d 900) (2000). Here, the record contains evidence showing that Razavi sought to exercise the option to buy, but Tela "refused, adamantly declaring that [Razavi could not exercise the option because] the contract had [been terminated]. [So there is a triable issue as to whether a] formal tender was thereby waived or excused." Id. See also *Fox Run Props. v. Murray*, 288 Ga. App. 568, 573 (2) (b) (654 SE2d 676) (2007) (seller waived tender of purchase money where it notified buyer that it would not attend closing). Because there is a genuine issue of material fact, the trial court properly denied summary judgment.

7. *Fraud.*

Tela contends that the trial court erred in denying its motion for summary judgment as to Razavi's counterclaim for fraud because it amounts to only a breach of contract claim for Tela's purported termination of the lease. But contrary to this contention, the fraud counterclaim is based on alleged acts, promises that Tela did not intend to perform, and misrepresentations which were part of a scheme to deceive Razavi and strip him of his rights under the option to buy. In order to prevail on its motion for summary judgment as to these claims, Tela must "either present[] evidence negating an essential element of the . . . claims or establish[] from the record an

11

absence of evidence to support such claims." *Cowart*, supra at 623 (1) (punctuation omitted). Tela has failed to carry this burden.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Brown v. Morton*, 274 Ga. App. 208, 210 (1) (617 SE2d 198) (2005) (citation and punctuation omitted). Tela has not presented evidence negating any of these essential elements, nor has it established from the record an absence of evidence supporting the fraud counterclaim. "Fraud may be proved by slight circumstances, and whether a misrepresentation is fraudulent and intended to deceive is generally a jury question." *JTH Tax, Inc. v. Flowers*, 302 Ga. App. 719, 726 (2) (b) (691 SE2d 637) (2010) (citation and punctuation omitted).

8. *Remaining arguments.*

Given our rulings above, we need not address Tela's remaining enumerations of error.

*Case No. A19A0201*

9. *Payment into registry of the court.*

Razavi challenges the portion of the trial court's summary judgment order requiring him to deposit the option purchase price into the registry of the court.

12

Requiring Razavi to deposit the full purchase price, with no immediate prospect of receiving title to the subject property and consequently no ability to offer a prospective lender a security interest, would defeat the express intent of the parties as reflected in the option to purchase. See OCGA § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction.").

So we reverse the portion of the trial court's summary judgment order requiring Razavi to deposit the option purchase price into the registry of the court.

10. *Remaining arguments.*

Given our ruling above, we need not address Razavi's remaining arguments.

*Judgment affirmed in Case No. A19A0200. Judgment reversed in Case No. A19A0201. Goss, J., concurs. McMillian, J., concurs in Divisions 1,2,3,4,5,6,7,8,10, and in the judgment only as to Division 9. *

**DIVISION 9 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**